**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MATT TAIBBI,                                        Civ. No:  1:25-cv-9511(GBD)

                Plaintiff,

            v.

EOIN HIGGINS and BOLD TYPE BOOKS,

 a division of  HACHETTE BOOK GROUP, INC.

              Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION

## TO DEFENDANTS' MOTION TO DISMISS

Robert Garson
**GS2 LAW PLLC**
20801 Biscayne Blvd., Suite 506
Aventura, Florida 33180
Tel.: (305) 780-5212
rg@gs2law.com
*Attorneys for Plaintiff Matt Taibbi*

Dated: March 3, 2026

# TABLE OF CONTENTS

*PRELIMINARY STATEMENT* .................................................................................... *1*

*ARGUMENT* ............................................................................................................ *4*

*I. STANDARD OF REVIEW* ...................................................................................4

*II. THE FAC PLEADS VERIFIABLE FALSE STATEMENTS OF FACT, NOT PROTECTED OPINION* .....5

A. Defendants' "Opinion" Defense Mischaracterizes the FAC ........................................ 6

B. The FAC Disputes the Factual Predicates Underlying Defendants' Conclusions ............................. 7

C. The Marketing Phrase "Follows the Money, Names Names" Is a Verifiable Factual Claim, Not Puffery ................................................................................................................. 9

*III. THE FAC ADEQUATELY PLEADS ACTUAL MALICE* ....................................................15

A. Defendants Proceeded Despite Knowing the Central Thesis Lacked Evidence ........................... 15

B. Defendants Ignored Publicly Available Exculpatory Information ................................................. 16

C. Plaintiff's Refusal to Be Interviewed Does Not Defeat Actual Malice ....................................... 17

D. The Publisher's Failure to Verify Supports Actual Malice ....................................................... 18

*IV. THE DEFAMATORY STATEMENTS ARE ACTIONABLE PER SE* .......................................18

*V. THE FAC ALLEGES CONCRETE DAMAGES* ................................................................20

*VI. BOOK COVERS CAN BE DEFAMATORY UNDER FEDERAL LAW* ....................................20

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................ 5

*Battle v. A & E Television Networks, LLC*, 837 F. Supp. 2d 767, 776 (M.D. Tenn. 2011) ........................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................................ 5

*Biro v. Conde Nast* ("*Biro I*"), 883 F. Supp. 2d 441, 460-61 (S.D.N.Y. 2012) ........................................... 12

*Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) ............................................................ 7

*Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995) ................................................................. 6

*Cabello-Rondon v. Dow Jones & Co.*, 2017 WL 3531551 ............................................................ 6

*Caraway v. L.S. Agency*, 1986 WL 12529, at *6 (S.D.N.Y. Oct. 27, 1986) ............................................... 14

*Cassava Scis., Inc. v. Heilbut*, 2024 WL 553806 ............................................................... 11

*Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014) ......................................................... 6, 7, 19

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242 (9th Cir. 1990). ................ 11

*Galland v. Johnston*, 2015 WL 1290775 .......................................................................... 7

*Greene v. Health & Hosps. Corp. of City of N.Y.*, 1995 WL 661111, at *3 (Sup. Ct., N.Y. Cnty. Mar. 23, 1995)
    .................................................................................................. 19

*Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152-53 (1993).................................................... 5, 6, 14

*Hall v. Binghamton Press Co.*, 263 A.D. 403, 412 (N.Y. App. Div. 1942), *aff'd*, 296 N.Y. 714 (1946) .......... 19

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) ....................................... 16, 17

*Herbert v. Lando*, 441 U.S. 153, 170 (1979) ............................................................... 5, 18

*Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) ......................................................... 5

*InkMango, Inc. v. Warren*, 84 Misc. 3d 1227(A), at *4 (Sup. Ct., N.Y. Cnty. 2024), *aff'd*, 243 A.D.3d 476 (1st
    Dep't 2025) ........................................................................................ 17

*Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998) .................................... 7, 8

*Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 419 (S.D.N.Y. 2013) ........................... 18

*Kesner*, 515 F. Supp. 3d at 170 .......................................................................... 5, 12

*Lynch v. City of N.Y.*, 952 F.3d 67, 74-75 (2d Cir. 2020) ...................................................... 5

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 511 (1991) ................................................... 15

*McGlothlin v. Hennelly*, 370 F. Supp. 3d 603, 618 (D.S.C. 2019) ............................................. 12

*McManus v. Doubleday & Co.*, 513 F. Supp. 1383, 1390 (S.D.N.Y. 1981) ......................................... 18

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)....................................................... 10

*Modern Products, Inc. v. Schwartz*, 734 F. Supp. 362 (E.D. Wis. 1990) ....................................... 9, 20

*Montgomery v. Risen*, 197 F. Supp. 3d 219, 248 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017) ......... 19

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)..................................................... 15

*Obi v. Amoa*, 58 Misc. 3d 446, 452 (Sup. Ct., Kings Cnty. 2017).............................................. 8

*Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 382-83 (1977)..................................... 18

*Satanic Temple, Inc. v. Newsweek Mag. LLC*, 774 F. Supp. 3d 688, 705 (S.D.N.Y. 2025)......................... 16

*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) ........................................................... 15

*St. Louis v. NYP Holdings, Inc.*, 2017 WL 887255, at *1-2 (Sup. Ct., N.Y. Cnty. Feb. 6, 2017)................ 13

*Stanton v. Metro Corp.*, 438 F.3d 119, 127 (1st Cir. 2006) .................................................. 12

*Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986) ......................................................... 6

*Suozzi v. Parente*, 202 A.D.2d 94, 100-01 (1st Dep't 1994) ................................................. 19

*Test Masters Educ. Servs. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009)................ 13, 14

**PRELIMINARY STATEMENT**

Plaintiff Matt Taibbi respectfully submits this memorandum of law in opposition to Defendants' Eoin Higgins and Bold Type, an imprint of Basic Books Group, a division of Hachette Book Group, Inc. ("Hachette") (collectively, "Defendants") motion to dismiss the Amended Complaint (ECF 22 "Amended Complaint" or "FAC").

We begin with a thought experiment. Imagine this Court spied in a bookshop a book with a cover bearing the title above *"OWNED: How Tech Billionaires on the Right Bought the Judges of the Southern District"* with the same puppeteer strings, the same marketing language promising to "follow the money" and "name names," the same claims of an "exposé" of professional "greed."



And picture that *your* name, Your Honor, appeared on the back cover as one of the "bought" "cronies" operating under the "snug patronage of billionaires."

Now suppose that the book itself contained no evidence whatsoever of any financial transaction, payment, or *quid pro quo* involving Your Honor, just speculation about your "Gen X ethos," "personal politics," and the "nuance of getting older." How would this Court receive a motion to dismiss arguing that the accusation Your Honor was "bought" is merely "rhetorical hyperbole"?

This is not an academic exercise. It is precisely what Defendants have done to Plaintiff Matt Taibbi, an award-winning journalist whose name and reputation have been called into question and plastered across a book cover accusing him of corruption, while the book itself concedes it cannot prove the premise.

Defendants' second Motion to Dismiss ("Def. Brief") reads as though it were drafted as a matter of course, without having engaged with the granular factual detail laid out in the FAC. Time and again, Defendants assert that Plaintiff "does not dispute" the underlying facts, when the FAC is replete with specific, quantified factual disputes. Time and again, Defendants characterize accusations of corruption as mere "rhetorical hyperbole," while their own Preliminary Statement inadvertently concedes the Book does not support the cover's inflammatory premise.

Indeed, Defendants' gilding of the lily in their Preliminary Statement deeply overstates the supposed journalistic rigor of the Book. They write that Higgins "[r]elying on a wealth of documentation and interviews" ultimately "concludes that factors like age, personal politics, Gen X ethos, and scandal led to Taibbi affiliating with the Right and

aligning himself with Musk. Financial benefits, the Book makes clear, were at most a byproduct of his choices." (Def. Brief p.1) One might pause here to appreciate the irony: Defendants are *conceding* that the contents of the Book do not support the combined visual and textual elements on its cover. If Plaintiff's supposed corruption was merely a "byproduct" of "age" and "Gen X ethos," then what business does the cover have depicting him as a puppet to billionaires, "bought" and "owned," in a book that "follows the money"?

Defendants' Motion rests on two principal arguments: (1) the challenged statements are nonactionable opinion, and (2) Plaintiff failed to adequately plead actual malice. Both arguments fail when the FAC's well-pleaded factual allegations are properly credited, as they must be at this stage. The FAC demonstrates that Defendants published verifiable false statements of fact, not mere opinion, and did so with actual malice by proceeding with accusations of financial corruption despite knowing the central thesis lacked evidentiary support.

## STATEMENT OF FACTS

Plaintiff Matt Taibbi is an award-winning journalist who has spent decades holding powerful institutions accountable. In February 2025, Defendants published the book *Owned: How Tech Billionaires on the Right Bought the Loudest Voices on the Left* (the "Book"), which accuses Plaintiff of being financially corrupted by tech billionaires, specifically Elon Musk, and of abandoning his journalistic ethics for personal profit.

The Book's cover depicts journalists, including Plaintiff, as puppets controlled by billionaire puppeteers. The subtitle announces that billionaires "Bought" the "Loudest

Voices on the Left." The back cover promises that the Book "follows the money, names names" and describes it as "a biting exposé of journalistic greed." The jacket flap identifies Plaintiff as operating under the "snug patronage of billionaires" and labels him a "crony."

The FAC alleges that these accusations are false. Plaintiff has never accepted money, employment, or inducements from Elon Musk or any other conservative billionaire patron. (FAC ¶ 14 ) To the contrary, Plaintiff twice refused Musk's monetization offers, citing ethical concerns (FAC ¶ 15). When Musk offered Plaintiff a more lucrative platform arrangement, Plaintiff responded: "the optics would be really bad, journalistic ethics-wise." Musk immediately replied: "Then I guess it's goodbye." ((FAC ¶ 43) After refusing Musk's offer, Plaintiff was immediately kicked off the Twitter Files project, his X following was frozen and deamplified. (FAC ¶ 45 )

The FAC further alleges that the Book's claims of financial benefit are false.  (FAC ¶  37) Rather than experiencing a "financial windfall" from the Twitter Files project, Plaintiff lost $20,644 and 4,844 subscribers during months two and three of the project. 86.3% of Plaintiff's Substack growth came before the Twitter Files, not after. (FAC ¶  39) The Book contains no evidence of any financial transaction, payment, contract, or quid pro quo involving Plaintiff. Not one. Defendant Higgins admitted contemporaneously that readers "expecting proof of who was 'bought' would be disappointed." (FAC ¶ 62)

## ARGUMENT

### I. STANDARD OF REVIEW

At the motion to dismiss stage, courts must "accept all factual allegations in the complaint as true" and "draw all reasonable inferences in favor of the plaintiff." *Lynch v.*

*City of N.Y.*, 952 F.3d 67, 74-75 (2d Cir. 2020). The question is whether the FAC states a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is appropriate only if the complaint fails to plead facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Critically, the "actual malice" standard, while demanding, does not require a plaintiff to prove his case at the pleading stage. As the Supreme Court has recognized, actual malice often depends on the defendant's subjective state of mind, which "does not readily lend itself to summary disposition." *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979). Discovery is typically necessary to probe what defendants knew and when they knew it. *See Herbert v. Lando*, 441 U.S. 153, 170 (1979) (holding that plaintiffs may inquire into the editorial process to establish actual malice).

## II. THE FAC PLEADS VERIFIABLE FALSE STATEMENTS OF FACT, NOT PROTECTED OPINION

Under New York law, "[w]hether a challenged statement is an opinion is a question of law." *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 170 (S.D.N.Y. 2021). The court must consider: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal…readers or listeners that what is being read or heard is likely to be opinion, not fact." *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152-53 (1993). Critically, New York "has embraced a test for determining what constitutes a nonactionable statement of opinion

that is more flexible and is decidedly more protective of the cherished constitutional guarantee of free speech [than the Federal standard]." *Id.* at 152.

The court must also "look at the content of the entire communication, its tone and apparent purpose, to determine whether a reasonable person would consider it as conveying facts about the plaintiff." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995). Under Second Circuit precedent, "only factual statements are actionable" in defamation. *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014). A "pure opinion" is "a statement of opinion which is accompanied by a recitation of the facts upon which it is based." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986). Such statements are fully protected because they provide "the full context of the communication 'signal[ing] readers or listeners that what is being read or heard is likely to be opinion, not fact.'" *Gross*, 82 N.Y.2d at 154.

## A. Defendants' "Opinion" Defense Mischaracterizes the FAC

Defendants repeatedly assert that Plaintiff "does not dispute the facts upon which a challenged opinion is based." (Def. Brief pp. 10, 13, 17, 18, 19, 20) This is demonstrably false, and reading their brief, one wonders whether counsel actually reviewed the Amended Complaint before filing. The FAC contains specific, quantified factual allegations that directly contradict the Book's central premises: dollar figures, subscriber counts, percentage breakdowns, and contemporaneous documentary evidence.

While "a defamation claim will not survive dismissal when a plaintiff does not dispute the facts upon which a challenged opinion is based," *Cabello-Rondon v. Dow Jones & Co.*, 2017 WL 3531551, at *5-6 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018), here Plaintiff vigorously disputes those very facts. *See also Galland v. Johnston*,

2015 WL 1290775, at *6 (S.D.N.Y. Mar. 19, 2015) (dismissing claim only where plaintiff did not dispute fact upon which opinion was premised); *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998) (same).

B. The FAC Disputes the Factual Predicates Underlying Defendants' Conclusions

*1. The "Financial Windfall" Narrative Is Factually Disputed*

The Book claims Plaintiff experienced a "financial windfall" (p. 186) and that his "Substack had exploded after the Twitter Files reporting." The FAC disputes this with concrete evidence:

i)    86.3% of Plaintiff's Substack growth came *before* the Twitter Files project, not after. (FAC ¶ 38);

ii)   During months two and three of the project, Plaintiff experienced 4,844 subscriber cancellations and a $20,644 loss in revenue. (FAC ¶ 39);

iii)  Plaintiff "lost money for the first time in his career as an independent journalist" during peak public interest in the project. (FAC ¶ 40);

These are not subjective characterizations, they are specific, measurable facts that can be proven true or false. If Plaintiff actually *lost* money during the Twitter Files project, describing it as a "windfall" is not opinion; it is a false statement of fact. *See Chau* 771 F.3d *at* 128 ("only factual statements are actionable" in defamation). The Second Circuit has emphasized that statements capable of objective verification are actionable facts, not protected opinion. See *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (affirming dismissal only where challenged statements were "quintessential statements of opinion" incapable of being proven true or false).

*2. The "Conditional Relationship" with Musk Is Factually Disputed*

Defendants characterize Plaintiff as benefiting from "conditional alignment" with Elon Musk. (Def. Brief pp. 5, 14). The FAC alleges the opposite in that Plaintiff *twice refused* Musk's monetization offers, citing ethical concerns. (FAC ¶¶ 15, 42, 45)

When Musk offered Plaintiff a more lucrative platform arrangement, Plaintiff responded: "the optics would be really bad, journalistic ethics-wise." Musk immediately replied: "Then I guess it's goodbye." (FAC ¶ 43)

After refusing Musk's offer, Plaintiff "was immediately kicked off the Twitter Files project, his X following was frozen and deamplified." (FAC ¶ 45)

A Substack spokesperson stated: "Matt was being pressured by Elon to stop publishing on Substack and instead publish exclusively on Twitter...We appreciated Matt standing his ground by not submitting to Elon's demands." (FAC ¶ 44)

Far from being "bought" or "owned," Plaintiff alleges he refused to be bought and suffered professional consequences for that refusal. This is precisely the opposite of what the Book claims. The FAC thus presents exactly the kind of factual dispute that defeats dismissal. *See Jewell* 23 F.Supp. 2d at 377 (dismissal appropriate only where plaintiff does not dispute fact upon which opinion was premised). Importantly, "[w]hen the [] statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals to the reader that what is said is opinion, and not fact." *Obi v. Amoa*, 58 Misc. 3d 446, 452 (Sup. Ct., Kings Cnty. 2017). Here, however, the FAC alleges that the Book's marketing materials present the accusations not as conjecture but as the product of documented financial investigation, the exact opposite signal.

*3. The Book Contains No Evidence of Financial Corruption*

The FAC alleges that "the Book contains no evidence whatsoever that Plaintiff received payments, sponsorship, or financial inducement from Elon Musk or any other billionaire. The Book does not identify any financial transfers, contracts, compensation arrangements, or quid pro quo of any kind involving Plaintiff." (FAC ¶ 29)

This is a categorical denial of the Book's central accusation. Either Defendants can produce evidence of financial corruption, or they cannot. Given that the defamatory statements in the book are premised on false factual allegations, Defendants' motion should be denied at this juncture.

C. The Marketing Phrase "Follows the Money, Names Names" Is a Verifiable Factual Claim, Not Puffery

Return to the thought experiment with which we began: the hypothetical book accusing judges of this District of being "bought" by tech billionaires, with Your Honor's name on the back cover as a "crony" operating under "snug patronage." Would such a cover be protected as mere "rhetorical hyperbole" if the book itself contained no evidence of any financial transaction involving you, just musings about your "Gen X ethos"?

Federal courts have consistently held that book covers combining visual and textual elements can constitute defamatory communications when they reasonably convey false statements that harm reputation. In *Modern Products, Inc. v. Schwartz*, 734 F. Supp. 362 (E.D. Wis. 1990), the court directly established this principle, ruling that a book cover depicting a health food product among "junk foods" could convey a

defamatory meaning. The court held that "a reasonable jury could find that the book cover conveys a defamatory meaning by construing the words and the picture as a message." *Id.* at 365. While book covers receive First Amendment protection as artistic expression, this protection does not immunize them from defamation liability when they make factual assertions rather than pure artistic statements.

Defendants may argue that the back-cover claim that the Book "follows the money, names names" is mere promotional puffery. This argument fails for several reasons.

*1. The Phrase Describes Contents, Not Quality*

Unlike typical puffery (e.g., "riveting," "must-read," "groundbreaking"), which evaluates the *quality* of a work, "follows the money, names names" represents what the Book *contains*, namely, documented financial tracing and specific identifications of wrongdoers.

*2. The Claim Is Objectively Testable*

Whether the Book traces money to Plaintiff is objectively verifiable. Either it documents financial transactions involving Plaintiff, or it does not. The FAC alleges it does not. This binary determination distinguishes the phrase from inherently subjective puffery, which is nonactionable precisely because it cannot be proven true or false. See *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (constitutional protection afforded to statements not "capable of being proven true or false").

*3. The Phrase Creates Reasonable Reader Reliance*

The FAC argues: "Reasonable readers are entitled to rely on representations that

a work purports to 'follow the money' and 'name names.' When no such evidence is provided, the resulting accusations of corruption are not protected opinion, but false statements and implications of fact published with reckless disregard for the truth." (FAC ¶33)

Puffery is defined as language no reasonable consumer would rely upon.  See *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242 (9th Cir. 1990). Here, the phrase creates a specific expectation, that the Book contains financial evidence, that allegedly goes unfulfilled.

*4. Defendant's Own Admission Confirms the Factual Expectation*

Defendant Higgins admitted contemporaneously that readers "expecting proof of who was 'bought' would be disappointed." (FAC ¶ 62) This admission demonstrates that even the author understood the cover itself created a factual expectation the Book could not meet, inconsistent with puffery, which creates no reasonable expectation at all.

*5. The Phrase Functions to Transform Opinion into Implied Fact*

The FAC argues that "follows the money" works in conjunction with other statements to create a false factual impression: "By falsely presenting the Book as an exposé that 'follows the money,' Defendants cloaked unsupported accusations in the aura of investigative reporting, thereby encouraging readers to accept defamatory conclusions about Plaintiff's integrity and motives despite the absence of evidence." (FAC ¶31)

Terms like "crony," "bought," and "owned" might be protected opinion standing alone. See *Cassava Scis., Inc. v. Heilbut*, 2024 WL 553806, at *5 (S.D.N.Y. Jan. 5, 2024)

("cronies" is non-actionable opinion); *McGlothlin v. Hennelly*, 370 F. Supp. 3d 603, 618 (D.S.C. 2019) ("crony capitalist" or "crook" are protected rhetorical hyperbole). But when marketed as conclusions derived from financial investigation ("follows the money"), they become implied factual assertions that the accused was actually paid. *Cf. Kesner*, 515 F. Supp. 3d at 170 (plaintiff must show "the language of the communication[s] as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference").

Courts have recognized that context can transform otherwise protected opinion into actionable fact. *See Biro v. Conde Nast* ("*Biro I*"), 883 F. Supp. 2d 441, 460-61 (S.D.N.Y. 2012) (courts "afford[] constitutional protection to the type of speech often characterized as 'rhetorical hyperbole,' 'parody,' 'loose,' or 'figurative'" but only where context signals non-literal meaning). The First Circuit has held that "defamation can arise from the publication of the plaintiff's photograph in conjunction with a defamatory statement, even in the absence of any express textual connection between the statement and the photograph." *Stanton v. Metro Corp.*, 438 F.3d 119, 127 (1st Cir. 2006). This principle of juxtaposition-based defamation applies equally to book covers where images and text combine to create meaning. Here, the FAC alleges the opposite context: a book cover, which is itself a publication,  representing documented financial investigation rather than rhetorical commentary. (FAC ¶ 27)

D. The "Fair Index" Doctrine Does Not Apply, And Defendants Concede The Cover Does Not Match The Contents

Defendants argue the Book's cover is a "fair index" of substantially accurate

material. See *Test Masters Educ. Servs. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009) (headline not independently actionable if it is a "fair index" of "substantially accurate" material). Under this standard, Defendants "need not choose the most delicate words available in constructing [a] headline," *id.*, even if it is "unfortunate, sensationalist and drafted simply to garner attention." *St. Louis v. NYP Holdings, Inc.*, 2017 WL 887255, at *1-2 (Sup. Ct., N.Y. Cnty. Feb. 6, 2017).

But here is the remarkable thing, putting aside that a book cover is not a headline, here is where the thought experiment from our Preliminary Statement becomes directly relevant: Defendants' own Preliminary Statement concedes that the cover does *not* fairly index the Book's contents. Defendants write that Higgins "concludes that factors like age, personal politics, Gen X ethos, and scandal led to Taibbi affiliating with the Right and aligning himself with Musk. Financial benefits, the Book makes clear, were at most a byproduct of his choices."

Stop and consider what this means. The Book's cover depicts Plaintiff as a puppet to billionaires. The subtitle announces that billionaires "Bought" him. The marketing promises to "follow the money" and expose "journalistic greed." But *Defendants themselves* now tell this Court that the Book actually concludes Plaintiff's conduct was driven by "age," "Gen X ethos," and "scandal", with financial benefits as merely "a byproduct." (Def. Brief p. 1). If "age" and "Gen X ethos" are the actual explanations, what is the cover depicting? The answer is obvious: a defamatory false premise designed to sell books.

This is precisely the scenario posed in our opening thought experiment. The

hypothetical book about judges of this District would likewise fail the fair-index test if its cover depicted judicial corruption while its contents offered only speculation about generational attitudes. The cover of such a book could not be a "fair index" of substantially accurate material because the material would not support the cover's accusation. The same is true here.

The "fair index" doctrine protects headlines and covers only when the underlying material is accurate. *Test Masters*, 603 F. Supp. 2d at 589. If the Book's factual premises are themselves false, as the FAC alleges, the cover cannot be a "fair index" of accurate content. More damningly, if the Book's *own conclusions* (as characterized by Defendants) do not support the cover's accusations, the cover cannot possibly be a "fair index" of those conclusions. As the Second Circuit has recognized, courts must consider challenged language in its "full context." *Gross*, 82 N.Y.2d at 152-53; *see also Caraway v. L.S. Agency*, 1986 WL 12529, at *6 (S.D.N.Y. Oct. 27, 1986) (it is the court's "duty to view the cover objectively and not to 'pick out and isolate particular phrases'").

The FAC alleges:

i)      The Book claims Plaintiff's income "exploded" when he actually lost money. (FAC ¶ 40.)

ii)     The Book implies Plaintiff benefited from Musk (FAC ¶2) when he was actually punished for refusing Musk's offers.

iii)    The Book accuses Plaintiff of ignoring Trump administration censorship stories when Plaintiff "in fact broke that story." (FAC ¶58)

A cover cannot be a "fair index" of material the FAC alleges is substantially inaccurate.

### III. THE FAC ADEQUATELY PLEADS ACTUAL MALICE

As a public figure, Plaintiff must allege that Defendants published with "actual malice," knowledge that the statements were false or reckless disregard of their falsity. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 511 (1991). It is a subjective standard that is measured at the time of publication by "what the defendant actually believed and not by 'whether a reasonably prudent man would have published, or would have investigated before publishing.'" *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). The FAC satisfies this standard.

A. Defendants Proceeded Despite Knowing the Central Thesis Lacked Evidence

The FAC alleges that Defendants "marketed the Book as an exposé that 'follows the money' and 'names names'" while knowing "no such evidence supported the accusations against Plaintiff." (FAC ¶¶ 19, 28, 34, 55, 62, 73).

Critically, Defendant Higgins admitted contemporaneously that the Book's central premise was unsupported: "If people are expecting [proof] they're going to be a little disappointed because you can't really track decisions like this 100 percent to one thing alone." (Fac ¶ 5).

This admission alone is powerful circumstantial evidence supporting an inference of actual malice: Defendants knew their accusations of financial corruption lacked evidentiary support yet published and marketed the Book as if they had documented proof. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731. Higgins's contemporaneous admission that readers "expecting proof" would "be

disappointed" is precisely such evidence of subjective doubt, yet publication and promotion continued unabated.

B. Defendants Ignored Publicly Available Exculpatory Information

The FAC alleges that exculpatory information was publicly available and ignored:

i)    Plaintiff's published refusal of Musk's monetization offer and the documented exchange demonstrating ethical concerns were public knowledge. (FAC ¶¶ 15, 42).

ii)   The Substack spokesperson's statement praising Plaintiff for "standing his ground by not submitting to Elon's demands" was publicly available. (FAC ¶ 44).

iii)  Plaintiff's Twitter Files reporting on Trump administration censorship—which the Book falsely claims he ignored—was published on December 2, 2022.  (FAC ¶ 58).

A defendant who ignores obvious sources that would confirm falsity may act with reckless disregard. See *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) ("Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category."). The FAC adequately alleges that Defendants ignored readily available evidence contradicting their thesis. *See also Satanic Temple, Inc. v. Newsweek Mag. LLC*, 774 F. Supp. 3d 688, 705 (S.D.N.Y. 2025) (finding no actual malice only where defendant "spoke with multiple other individuals, conducted her own research, including reviewing articles, books, and internet sources, and interviewed other individuals, including non-anonymous sources"), *appeal filed*, (2d

Cir. Apr. 11, 2025).

C. Plaintiff's Refusal to Be Interviewed Does Not Defeat Actual Malice

Defendants emphasize that Plaintiff declined an interview request ("Lol. Pass"). (FAC ¶ 48).This does not defeat actual malice for several reasons:

First, a plaintiff's refusal to cooperate does not immunize a defendant who proceeds with false accusations despite other available sources. *See Harte-Hanks*, 491 U.S. at 692 (actual malice may be found where defendant "purposeful[ly] avoid[ed]" the truth despite available sources); *InkMango, Inc. v. Warren*, 84 Misc. 3d 1227(A), at *4 (Sup. Ct., N.Y. Cnty. 2024), *aff'd*, 243 A.D.3d 476 (1st Dep't 2025) (finding no actual malice only where evidence showed defendant had "reached out to [plaintiff] multiple times for an interview" and plaintiff declined, but defendant nonetheless conducted thorough alternative investigation). There was no thorough alternative investigation here, as discovery will show.

Second, the FAC alleges that publicly available information contradicted Defendants' thesis. Defendants did not need Plaintiff's cooperation to discover that he lost money during the Twitter Files project or that he refused Musk's monetization offers. (FAC ¶ 42 ).

Third, Higgins's public admission in Washington Babylon that readers expecting "proof" would be "disappointed"  (FAC ¶¶ 5, 62, 65) reflects awareness that the central accusation lacked support, awareness that necessarily existed before publication.

D. The Publisher's Failure to Verify Supports Actual Malice

      The FAC alleges that Bold Type Books and Hachette Book Group failed to perform adequate fact-checking and ratified Defendant Higgins's reckless investigation. (FAC ¶ 72)

      While a publisher may ordinarily rely on an author's reputation, *McManus v. Doubleday & Co.*, 513 F. Supp. 1383, 1390 (S.D.N.Y. 1981), such reliance becomes reckless when:

    i)     The accusations are serious (professional corruption);

    ii)     The marketing makes specific factual claims ("follows the money");

    iii)    Obvious sources would have revealed the falsity;

*See Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 382-83 (1977) (analyzing publisher's reliance on author's "reportorial abilities"). The FAC adequately alleges that the Publisher Defendants acted with actual malice by publishing accusations of financial corruption without verifying whether any financial evidence existed. (FAC ¶¶ 32, 33, 55, 60, 72) Discovery is necessary to test Defendants' assertions and probe what they knew before publication. *See Herbert v. Lando*, 441 U.S. at 170 (recognizing necessity of inquiry into editorial process in actual malice cases).

### IV. THE DEFAMATORY STATEMENTS ARE ACTIONABLE PER SE

      Under New York law, statements are defamatory per se if they "charg[e] an individual with a serious crime" or "tend[] to injure another in his or her trade, business, or profession." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 419 (S.D.N.Y. 2013). In New York, a plaintiff must allege: "(1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of

the defamatory statement; and (5) special damages or per se actionability." *Chau v. Lewis*, 771 F.3d at 126-27 . The FAC alleges that the Book accuses Plaintiff, a journalist, of:

i)  Being "bought" and "owned" by billionaires;

ii)  Operating under the "snug patronage of billionaires"; (FAC ¶ 18)

iii)  "Cashing in" on his journalism for personal profit; (FAC ¶¶ 2, 37)

iv)  Professional "greed" and corruption; (FAC ¶¶ 19, 25, 28, 32, 34, 48, 52, 62, 73)

v)  Abandoning journalistic ethics by "fully dispens[ing] with any pretense of challenging power" (FAC ¶ 46)

For a journalist, accusations of being financially corrupted and abandoning professional ethics are quintessentially defamatory per se. They strike at the core of Plaintiff's professional reputation and livelihood. *See Suozzi v. Parente*, 202 A.D.2d 94, 100-01 (1st Dep't 1994) (noting that "clear assertion[s] of criminality" or corruption are defamatory); *cf. Greene v. Health & Hosps. Corp. of City of N.Y.*, 1995 WL 661111, at *3 (Sup. Ct., N.Y. Cnty. Mar. 23, 1995) (requiring "clear allegation of any criminal conduct" for defamation per se). Courts have recognized that accusations of professional corruption, including being motivated by "greed" or improper financial incentives, can constitute actionable defamation. *See Montgomery v. Risen*, 197 F. Supp. 3d 219, 248 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017) (recognizing that accusations of being motivated by greed or ambition may be defamatory in certain contexts). While Defendants argue that "greed" comes in many forms including "greed for office, praise, popularity, fame," *Hall v. Binghamton Press Co.*, 263 A.D. 403, 412 (N.Y. App. Div. 1942), *aff'd*, 296 N.Y. 714 (1946) the FAC alleges the Book specifically accuses Plaintiff of *financial*

corruption, not mere ambition, by marketing it as an exposé that "follows the money."

## V. THE FAC ALLEGES CONCRETE DAMAGES

The FAC alleges that  accusations that accuse "Plaintiff of professional corruption and dishonesty" strike at "the core of his profession." (FAC ¶ 73) That "Plaintiff has never burned a source, broken a confidence, massaged a quote, or colored outside factual lines." (FAC ¶ 73). Plaintiff seeks damages in excess of $1,000,000 (FAC ¶ 80).

While defamation per se does not require proof of special damages, the FAC's allegations of reputational harm, corruption, dishonesty, and unethical conduct in his profession adequately plead damages for purposes of surviving dismissal.

## VI. BOOK COVERS CAN BE DEFAMATORY UNDER FEDERAL LAW

Lest there be any doubt, federal courts have squarely held that book covers can constitute defamatory publications. In *Modern Products, Inc. v. Schwartz*, 734 F. Supp. 362 (E.D. Wis. 1990), the court addressed "whether the jacket is capable of conveying a defamatory meaning" and held that visual and textual elements on book covers can work together to create actionable defamatory communications. *Id.* at 365. The court emphasized that "words which charge an individual or a corporation with dishonorable, unethical or unprofessional conduct in a trade, business or profession are capable of a defamatory meaning." *Id*. at 364.

This integrated analysis applies directly to book covers where multiple design elements work together to convey meaning. As the Middle District of Tennessee emphasized in *Battle v. A & E Television Networks, LLC*, 837 F. Supp. 2d 767, 776 (M.D. Tenn. 2011), defamatory meaning must be assessed holistically: "The words must be

viewed in their proper context in juxtaposition to all of the audio and visual components of the television broadcasts as a whole. The defendant's defamatory words, standing alone, cannot readily be identified in isolation without also considering the accompanying visual images."

Here, the cover's puppeteer-string imagery, combined with the title "OWNED," the subtitle "How Tech Billionaires on the Right Bought the Loudest Voices on the Left," the back-cover claim to "follow the money, names names," and the identification of Plaintiff as a "crony" operating under "patronage," creates an integrated defamatory communication that a reasonable jury could find conveys false statements of fact.

The hypothetical cover depicting judges of this District as puppets to billionaires would be analyzed the same way. If such a cover identified Your Honor by name as a "crony" in the "snug patronage of billionaires," and promised to "follow the money" to prove judicial corruption, and then the book itself contained no evidence of any financial impropriety, only speculation about "personal politics" and "getting older," no court would dismiss such a claim as targeting mere "rhetorical hyperbole." The cover's integrated visual and textual elements would convey a false factual assertion: that the named judge was financially corrupted. The same analysis applies to the Book at issue here.

**CONCLUSION**

The FAC adequately pleads, verifiable false statements of fact, actual malice, and defamation per se. The Defendants' accusations strike at the core of Plaintiff's professional reputation as a journalist.

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Dated:          March 3, 2025
                Miami, FL

                                    Respectfully submitted,

                                    **GS2LAW PLLC**

                                    By: _____
                                    Robert Garson (RG 1521)
                                    20801 Biscayne Blvd, Suite 506
                                    Aventura, FL, 33180
                                    rg@gs2law.com
                                    *Attorneys for Plaintiff, Matt Taibbi*