UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MATT TAIBBI,

                    Plaintiff,

     v.

EOIN HIGGINS and BOLD TYPE BOOKS, a division of HACHETTE BOOK GROUP, INC.,

                    Defendants.

Case No. 1:25-cv-09511-GBD

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF MATT TAIBBI'S AMENDED COMPLAINT**

 

**DAVIS WRIGHT TREMAINE LLP**
Elizabeth A. McNamara
Leena M. Charlton
1251 Avenue of the Americas, 42ND Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
          leenacharlton@dwt.com

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... II

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    A.    The Challenged Statements Are Protected Opinions ............................................. 2

        1.    Plaintiff Disputes the Book's Conclusions, But Not Their Factual Basis .. 2

        2.    The Complaint Fails to Allege Defamation by Implication ........................ 7

    B.    Plaintiff Still Has Not Alleged Actual Malice ........................................................ 8

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1st Amend. Praetorian v. New York Times Co.*,
   2025 WL 949575 (S.D.N.Y. Mar. 28, 2025) ................................................................2, 10

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd,* 876 F.3d 413 (2d Cir. 2017) ...........................10

*Battle v. A & E Television Networks, LLC*,
   837 F. Supp. 2d 767 (M.D. Tenn. 2011) ................................................................................6

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd,* 807 F.3d 541 (2d Cir.),
   *aff'd,* 622 F. App'x 67 (2d Cir. 2015) ...................................................................................8

*Cabello-Rondon v. Dow Jones & Co.*,
   2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d. Cir. 2018) ......4, 10

*Cassava Scis., Inc. v. Heilbut*,
   2024 WL 553806 (S.D.N.Y. Jan. 5, 2024) .............................................................................6

*Chaiken v VV Publ'g Corp.*
   119 F.3d 1018 (2d Cir. 1997) ...............................................................................................10

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) .................................................................................................6

*Edwards v. Nat'l Audubon Soc., Inc.*,
   556 F.2d 113 (2d Cir. 1977) ..................................................................................................9

*Greene v. Health & Hosps. Corp. of City of N.Y.*,
   1995 WL 661111 (Sup. Ct. N.Y. Cty. Mar. 23, 1995) .......................................................7, 8

*Groden v. Random House, Inc.*,
   61 F.3d 1045 (2d Cir. 1995) ..................................................................................................6

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ...............................................................................................................9

*Herbert v. Lando*,
   441 U.S. 153 (1979) ...............................................................................................................8

*Hutchinson v. Proxmire*,
   443 U.S. 111 (1979) ...............................................................................................................8

*InkMango, Inc. v. Warren*,
   84 Misc. 3d 1227(A) (Sup. Ct. N.Y. Cty. 2024), *aff'd*, 243 A.D.3d 476 (2025) ...................5, 7

*Kesner v. Dow Jones 7 Co., Inc.*,
   515 F. Supp. 3d 149 (S.D.N.Y. 2021)..............................................................................7

*Leidig v. BuzzFeed, Inc.*,
   371 F. Supp. 3d 134 (S.D.N.Y. 2019)..............................................................................5

*Mod. Prods., Inc. v. Schwartz*,
   734 F. Supp. 362 (E.D. Wis. 1990)..................................................................................6

*Montgomery v. Risen*,
   197 F. Supp. 3d 219 (D.D.C. 2016), *aff'd,* 875 F.3d 709 (D.C. Cir. 2017)..................6, 10

*Satanic Temple, Inc. v Newsweek Magazine*,
   774 F. Supp. 3d 688, 705 (S.D.N.Y (2025),
   *appeal filed* (25-868) (2d Cir. Apr. 11, 2025)..........................................................10

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)......................................................................................................10

*Stanton v. Metro Corp.*,
    438 F.3d 119 (1st Cir. 2006)...........................................................................................6

*Suozzi v. Parente*,
   202 A.D.2d 94 (1st Dep't 1994) ..................................................................................7, 8

*Thomas v. Pearl*,
   998 F.2d 447 (7th Cir. 1993) ...........................................................................................5

*Uzamere v. Daily News L.P.*,
   34 Misc. 3d 1203(A) (Sup. Ct. N.Y. Cty. 2011).............................................................5

*Wheeler v. Twenty-First Century Fox*,
   322 F. Supp. 3d 445 (S.D.N.Y. 2018).............................................................................5

## Other Authorities

Fed. R. Evid. 201(b)..............................................................................................................9

Rule 12(b)(6)........................................................................................................................1

Defendants respectfully submit this reply memorandum of law in further support of their Rule 12(b)(6) motion to dismiss ("Mot.") Plaintiff Matt Taibbi's amended complaint with prejudice.

## PRELIMINARY STATEMENT

Plaintiff's Opposition ("Opp.") is based on a book that does not exist. Far from challenging *Owned* as it was published—its real cover and content—Plaintiff invents accusations of "financial corruption." After two complaints and an opposition to Defendants' renewed motion to dismiss, Plaintiff has yet to identify where or how the Book actually accused him of financial corruption. The reason is simple: the Book never makes that accusation. Nonetheless, Plaintiff boldly asks this Court to "imagine" itself as the subject of this fictional book and allow this action to continue. But this is not a law school hypothetical. This motion must be decided based on the actual Book considered as a whole and in context.

The Book, considered in full, portrays Taibbi *not* as engaging in some corrupt financial quid pro quo, but as a journalist who "dispensed with any pretense of challenging power" when he partnered with Elon Musk under "certain conditions" to perform what some called "online PR work," culminating in acclaim from the Right and increased Substack subscriptions. Book at 182-83, 197. The Book expressly argues that Plaintiff reached this deal, not for money, but to "gain access," which Musk delivered "on a platter" in the form of internal Twitter documents. *Id.* at 182. To support this portrayal, Higgins meticulously documents how Plaintiff moved to the Right, his partnership with Musk to report out the Twitter Files, its public reception, and the aftermath. Plaintiff does not dispute this core factual foundation that informs the Book's title *Owned*; nor does he identify any false and defamatory facts. Instead, Plaintiff challenges the Book's political conclusions. Plaintiff cannot do an end run around these protected opinions by asserting that

"financial corruption" is "implied," because he did not plead a libel by implication claim, nor could he. Finally, Plaintiff still fails to identify any evidence to support a finding that either the author or publisher published the Book knowing it made any false statement about Plaintiff. For these several and independent reasons, this action should be dismissed.

## ARGUMENT

### A. The Challenged Statements Are Protected Opinions

#### 1. Plaintiff Disputes the Book's Conclusions, But Not Their Factual Basis

Identifying only a handful of words—some of which are not references to him—Plaintiff contends that the Book accuses him of being "financially corrupted" by Musk. Opp. at 3. While he now acknowledges that this Court must consider any challenged statements in their full context, he steadfastly refuses to engage with the work or its actual reporting. *See* Opp. 5-6, 12, 21.[1] Instead, he combines (and misinterprets) several different elements—the title, cover image, and select phrases from the jacket and text—to invent a defamatory accusation of financial corruption. Opp. at 3. This ignores the interplay of the cover imagery, tone, underlying facts, contentions on both sides of various arguments, as well as the discussion of other subjects, like the billionaires, media commentators, and Glenn Greenwald, another featured journalist. *See 1st Amend. Praetorian v. New York Times Co.*, 2025 WL 949575, at *17 (S.D.N.Y. Mar. 28, 2025) (rejecting claim when "Plaintiff picks out specific phrases or statements from the article, removes them from their surrounding context in order to allege these defamatory implications"). In short, it is not a contextual analysis. It is more like viewing the ocean through a straw.

Plaintiff now acknowledges that "[t]erms like 'crony,' 'bought,' and 'owned' might be

---

[1] Plaintiff argues that the Book must be considered in context, but then discredits the fair index doctrine. Opp. at 6, 11-14, 20. However, the fair index doctrine simply formalizes the concept that the title, headline, or cover cannot be separated from the work and must be considered in the context of the whole work. *See* Mot. at 10-11.

2

protected opinion standing alone," Opp. at 11, but argues that these terms somehow become "implied factual assertions that the accused was actually paid." *Id.* at 12. Yet, at the same time, he admits that the "Book contains no evidence of any financial transaction, payment, contract, or quid pro quo" involving him. Opp. 4. Plaintiff focuses instead on the Book's coverage of Taibbi's work on the Twitter Files from December 2022 to April 2023 to draw his "financial corruption" inference. *See* Book at 182-205. The Book reports:

- "After years of confrontational commentary…Taibbi fully dispenses with any pretense of challenging power late in 2022. And he did so to gain access. Musk delivered it…on a platter." *Id.* at 182.

- Musk chose Taibbi for his "willingness to put forward the message Musk wanted" and, indeed, his reporting "aligned with Musk's personal agenda." *Id.* at 182, 187.

- Critics charged that Taibbi and Musk "deployed a coordinated leak," that Taibbi "volunteered to do online PR work for the world's richest man," and that, by asserting a "Musk-curated view," Taibbi's reporting was a "controlled infodump." *Id.* at 183-185.

- "Nonetheless, right-wing actors supported the reporting, lending Taibbi their platforms and hyping the story." Taibbi's "Twitter account blew up, and his "Substack—already incredibly successful—gained thousands of subscriptions." *Id.* at 185-186; *id.* at 196 ("His Substack had exploded after the Twitter Files reporting…").

- During his Twitter Files reporting, Taibbi "repeatedly refused to criticize" and "fawned over" Musk. But, in April 2023, he quit Twitter (and Musk) when Musk imposed a "blanket search ban" of all Substack links. The Book reports that Taibbi "publish[ed] portions" of his text conversations with Musk. *Id.* 195-196; *id.* at n.1 (linking to published text exchange).

Taibbi does not challenge *any* of these facts. And it is these undisputed facts that inform the opinion that Taibbi was "owned," *i.e.*, he effectively abandoned his (publicly perceived) principles to gain access to Musk's "cherry-picked" Twitter Files on "certain conditions," reported on the files in a way that aligned with Musk's views and personal agenda, refrained from criticizing Musk, and as a result enjoyed the support of "right-wing actors" and gained thousands of subscribers to his Substack. One could disagree—and Taibbi clearly does—as to whether the Book's conclusions

3

are correct, but they are all clearly opinions drawn from facts not in dispute. Mot. at 9-11.

Plaintiff argues that the Complaint is "replete" with "specific, quantified factual allegations" that dispute the Book's "central premises." Opp. at 2, 6. But the law requires him to allege that the *facts* Higgins cites are false, not the conclusions themselves. *See Cabello-Rondon v. Dow Jones & Co.*, 2017 WL 3531551, at *5-6 (S.D.N.Y. Aug. 16, 2017) (no claim where "plaintiff appears to seek every possible route around the essential fact that he does not claim that defendant's statements were false" (cleaned up)), *aff'd*, 720 F. App'x 87 (2d. Cir. 2018). Here, Plaintiff argues that the Book jacket's passing reference to "follow the money," "transforms opinion into implied fact" and means that any criticism (like "crony" or "owned") must necessarily involve a financial investigation revealing Plaintiff's financial corruption. Opp. at 10-12.

This premise collapses on inspection. It exclusively relies on jacket copy describing the Book as "[a] rich history of the decades-long rise of this new right-wing alternative media take-over, *Owned* **follows the money, names names,** and offers a chilling portrait of a future social media and news landscape." Compl. ¶ 16; *see* Mot. at 10 n.8. Yet, the Book certainly does "follow the money" and "name names," just not concerning Plaintiff. It details the financial wealth that allowed billionaires, like Elon Musk and Marc Andreessen, to capture social media platforms, like Twitter and Substack, and to hold considerable sway over the public discourse. *See, e.g.*, Book at 32-50. At the same time, the Book makes clear the featured reporters "fit into this world…by attaching themselves to these powerful men who have more than just cash to offer—they have social and cultural capital." *Id.* at 71; Compl. ¶ 34; *see also* Book at 182 (Taibbi "gain[ed] access.")

To support his false foundation, Plaintiff offers new facts that do not even contradict the Book's claims. *First*, Taibbi "disputes" that the Twitter Files generated a "financial windfall." Opp. at 7; *see* Book at 186. But Plaintiff does not (and cannot) dispute that he gained "thousands

4

of subscribers"—or, based on the Complaint, 13.7% of his 466,000+ Substack followers—*after* the Twitter Files. Mot. at 18; Compl. ¶¶ 12, 38-39.[2] Whether his gains in subscribers were a substantial "windfall" is a subjective conclusion. *See InkMango, Inc. v. Warren*, 84 Misc. 3d 1227(A), at *4 (Sup. Ct. N.Y. Cty. 2024) (information "may be considered 'critical' to one person, and not to another, so [it] is not 'capable of being proven true or false'") (citing *Mann v. Abel*, 10 N.Y.3d 271 (2008)), *aff'd*, 243 A.D.3d 476 (2025). *Next*, Plaintiff argues that his relationship with Musk was *not* "conditional" because Plaintiff "twice refused Musk's monetization offers." Opp. at 4, 8. But the author is plainly free to draw his own conclusion that Taibbi had a "conditional alignment" with Musk based on Taibbi's own words: Taibbi publicly disclosed that his access to the Twitter Files required "certain conditions," Mot. at 5 n.4, and that he "declined to criticize" Musk. *Id.* at 5; Book at 195 n.1, 197-201.[3] Nor does the fact that Taibbi ultimately refused Musk's "more lucrative platform arrangement" conflict with those views. Plaintiff glosses over the fact that his cited exchange with Musk occurred more than three months *after* he obtained access to the Twitter Files and only *after* Musk compromised his Substack income. *See* Opp. at 8; Book 195 n.1. This version of events highlights, rather than undermines, the conditional nature of their relationship. *Id.* When Taibbi challenged Musk, the relationship ended.

Ignoring Defendants' legal authorities that firmly state the applicable law, *see, e.g., Cassava Scis., Inc. v. Heilbut*, 2024 WL 553806, at *5 (S.D.N.Y. Jan. 5, 2024) ("cronies" is non-

---

[2] By his own admission, in early April 2023, Taibbi had "1.9 million followers" on Twitter, and he now alleges that he had 86% of his Substack following prior to the Twitter Files and that he lost $20,644 in revenue and 4,844 followers "during months two and three of the project." Compl. ¶ 39; Book at 195 n.1 (citing to Taibbi's Twitter post).

[3] *See Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) ("accurate quoting of another's statement cannot defame the speaker's reputation since the speaker is [herself] responsible for whatever harm the words might cause."); *Leidig v. BuzzFeed, Inc*., 371 F. Supp. 3d 134, 149 (S.D.N.Y. 2019) (allegedly defamatory statement based on plaintiff's "own words" was not substantially false); *Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 454 (S.D.N.Y. 2018) (quotes from an interview with the plaintiff did not have "a different effect on the mind" than the "truth would have produced"); *Uzamere v. Daily News L.P.*, 34 Misc. 3d 1203(A), at *3 (Sup. Ct. N.Y. Cty. 2011) (the article's description of plaintiff as "anti-Semitic" was corroborated by her own website).

actionable opinion); *Montgomery v. Risen,* 197 F. Supp. 3d 219, 248 (D.D.C. 2016) (a motivation of greed or ambition is a subjective judgment), *aff'd,* 875 F.3d 709 (D.C. Cir. 2017), Plaintiff cites to cases that entirely miss the point as they either address doctrines that are not at issue or are distinguishable on their facts. *See* Opp. at 18, 20-21. For example, *Mod. Prods., Inc. v. Schwartz,* 734 F. Supp. 362, 363 (E.D. Wis. 1990) and *Battle v. A & E Television Networks, LLC,* 837 F. Supp. 2d 767, 771-72 (M.D. Tenn. 2011) stand only for the proposition that a book cover *can* have a defamatory meaning and that a work must be considered as a whole. Plaintiff similarly cites *Stanton v. Metro Corp.*, but that case only underscores the "obligation to consider the entire context" in order to assess a defamatory meaning. 438 F.3d 119, 122, 124 (1st Cir. 2006) (juxtaposition of plaintiff's photograph with descriptions of teenage "mating habits" created a defamatory meaning as she was not the subject of, or referenced in, the article).[4] However, Defendants do not argue that book covers cannot be defamatory, and they agree that the cover must be reviewed in context. Finally, Plaintiff relies on *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.* to argue the challenged words are not "puffery." 911 F.2d 242 (9th Cir. 1990) (dismissing Lanham Act claim under 12(b)(6) and pendent state law claims); *see* Opp. at 10-11. But this is not a Lanham Act case, so the doctrine of "puffery" simply does not apply.

At bottom, the fair reading of the Book—its cover with its content—is that Taibbi traded on his reputation for *access*, not money. *See* Mot. 14-15. Whether this amounts to selling out, being "owned" by or the "crony" of Musk, enjoying his "snug patronage," or something else, the conclusions are fully protected opinions based on the very facts that Taibbi does not dispute. *See*

---

[4]*See also Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995) (dismissing alleged "misleading" promotional claims when they accurately described the book's content) ("it is important to distinguish between advertising statements made to summarize an argument or opinion *within* a book and those made *about* a book as a product. The former are essentially a matter of argument, to be accepted or rejected by those who read the book, while the latter might often be statements of fact that might be verifiable.") (emphasis in original).

6

Mot. at 13-14. *Kesner v. Dow Jones 7 Co., Inc.*, 515 F. Supp. 3d 149, 179 (S.D.N.Y. 2021).

### 2.   The Complaint Fails to Allege Defamation by Implication

While he argues "the Book specifically accuses Plaintiff of financial corruption, not mere ambition," Opp. at 19-20, Plaintiff never identifies any statement supporting that conclusion and instead rests on a contrived implication. *E.g.*, *id.* at 3, 11, 12 ("implied factual assertions that the accused was actually paid"). However, plaintiffs are required to affirmatively plead defamation by implication claims, and Plaintiff did not. *See InkMango,* 243 A.D.3d at 477 ("because plaintiff did not assert a cause of action for defamation by implication, it cannot now assert that the headline was defamatory by implication"); Compl. ¶¶ 76-80. Even if he had, his own Complaint shows that Defendants did not "intend or endorse" that implication, a necessary element to any implication claim. *See* Mot at 19 n.11 (citing *Kesner*, 515 F. Supp. 3d at 170; *Blouin v. Conde Nast*, 2026 WL 276119, at *2-3 (S.D.N.Y. Feb. 3, 2026)).

The allegations that "[t]he Book contains no evidence of any financial transaction, payment, contract, or quid pro quo involving Plaintiff. Not one." and that Higgins "admitted contemporaneously that readers expecting proof of who was 'bought' would be disappointed" Opp. at 4 (citing Compl. ¶ 62), only show that Higgins intended or endorsed *the opposite* of Plaintiff's manufactured implication that there was a financial quid pro quo. *See* Compl. ¶¶ 68-69. Simply criticizing Taibbi's career choices cannot amount to the implication of financial wrongdoing or criminality. *See Suozzi v. Parente,* 202 A.D.2d 94, 100-01 (1st Dep't 1994) ("In the absence of some clear assertion of criminality such an accusation is not defamatory"); *see also Greene v. Health & Hosps. Corp. of City of N.Y.*, 1995 WL 661111, at *3 (Sup. Ct. N.Y. Cty. Mar. 23, 1995) (no defamatory meaning without a "clear allegation of any criminal conduct"). Accordingly, even if Plaintiff intended to allege an implication claim, he has failed to state it.

### B. Plaintiff Still Has Not Alleged Actual Malice

Plaintiff does not dispute that the Book's portrayal is based on a wealth of previously published commentary on his relationship with Musk and his Twitter Files reporting—including statements and works by Taibbi himself—that are documented in the lengthy endnotes and whose credibility remains unchallenged. *See* Book at 251-280. Nor does he dispute that, though he declined two interview requests from Higgins, the Book still repeatedly draws on available remarks from Taibbi to add his perspective. Mot. at 21-22; Compl. ¶¶ 48-49. In addition, he has abandoned his singular factual allegation against Hachette. *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 269, 276 (S.D.N.Y. 2013) (must allege actual malice against each defendant), *aff'd,* 807 F.3d 541 (2d Cir.), *aff'd,* 622 F. App'x 67 (2d Cir. 2015). In the end, Plaintiff does not cite a single case with similar allegations that supports actual malice or that rebuts the cases Defendants cited, which dismissed such allegations upfront. Mot. 20-25.

Instead, as to Higgins, Plaintiff argues there is "powerful circumstantial evidence supporting an inference of actual malice" because he "admitted" that people would be disappointed if they expected proof of a deal between Taibbi and Musk since "you can't really track decisions like this 100 percent to one thing alone." Opp. at 15; Compl. ¶.[5] But, Plaintiff ignores that the Book never identifies a financial deal with Musk because it does *not* allege he is financially corrupt. *See Suozzi,* 202 A.D.2d at 100; *see also Greene*, 1995 WL 661111, at *3. Thus, statements that readers should not "expect[] proof" of a corrupt transaction are the truth, not evidence of actual malice.

Alternatively, Plaintiff argues that Higgins "ignored publicly available exculpatory information." Opp. at 16 (citing to *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657

---

[5] Plaintiff also suggests that discovery is necessary. Opp. at 5, 18. But the two cases he cites do not actually support that request. *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) (finding plaintiff was not a public figure and actual malice did not apply); *Herbert v. Lando*, 441 U.S. 153, 170 (1979) (decision on discovery motion, not a motion to dismiss).

8

(1989)). In *Harte-Hanks*, the reporter refused to review recordings in his possession and to interview a known key witness, both of which would have affirmatively disproved the challenged statements. 491 U.S. at 690-91. Here, most of the alleged "exculpatory" facts identified—such as details of Taibbi's revenue, lost subscribers, or the reaction "[i]nside Substack," Compl. ¶ 44, Opp. at 16-17—were not publicly available and do not contradict the Book's conclusions, let alone "exculpate" Taibbi. *See supra* at 4-5. Similarly, Plaintiff claims Higgins "ignored" evidence that Taibbi "report[ed] on Trump administration censorship" and "broke the story" on December 2, 2022. Opp. at 14, 16. But, Higgins never claimed Taibbi "ignored" that story; instead he criticized Taibbi for "cho[osing] to publish the Hunter Biden story first," which was "right-wing red meat." *Compare* Compl.¶ 58 *to* Book at 185; Mot. n.9. Regardless, Taibbi's "reporting" is *five words in the forty tweets* of the Twitter Files: Part One and hardly counts as breaking a story.[6]

Finally, Plaintiff alleges his "refusal of Musk's monetization offer" was publicly available and disproved any suggestion of an improper financial deal. Opp. 4, 8, 16-17. Even if his belated refusal were somehow contradictory, it is not actual malice to weigh Plaintiff's own publicly disclosed admission that he "declined to criticize" Musk for months more heavily than Plaintiff's post hoc denials. *Id.* at 195 n.1; *Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."). What Plaintiff fails to do is allege any facts to suggest that Higgins knew or had serious doubts concerning his actual depiction of Taibbi. Instead, the record shows that Higgins relied on previously published critiques of Taibbi's alignment with Musk, Taibbi's own statements, and public records. That

---

[6] *See* https://x.com/mtaibbi/status/1598828932395978752 (Dec. 2, 2022) ("10. Both parties had access to these tools. For instance, in 2020, requests from *both the Trump White House* and the Biden campaign were received and honored."). The Court may take judicial notice of the "Twitter Files," which were reported as a series of tweets, as they are "not subject to reasonable dispute." Fed. R. Evid. 201(b). They are also incorporated by reference. Mot. at 8.

alone belies actual malice. *Adelson v. Harris*, 973 F. Supp. 2d 467, 502 (S.D.N.Y. 2013) (citing cases), *aff'd,* 876 F.3d 413 (2d Cir. 2017). As does the concession that Higgins twice sought Taibbi's interview. Compl. ¶¶ 48-49. Taibbi had the opportunity to provide the facts he now proffers; he chose not to. *See Cabello-Rondon*, 2017 WL 3531551, at *10. Without sufficient allegations, Taibbi's argument boils down to different perspectives on the same events.

As for Hachette, Plaintiff has effectively abandoned his only factual allegation against it. *Compare* Opp. at 18 ("failed to perform adequate fact-checking") *to* Compl. ¶ 72 ("failed to fact-check"). And for good reason. The allegation is impermissibly conclusory and contradicted by 30 pages of endnotes. *1st Amend. Praetorian*, 2025 WL 949575, at *9 (allegations that are "completely conclusory and unsupported by specific facts" cannot support actual malice); *see* Mot. at 25 n.13. Further, his own authorities confirm fact checking is not necessary, let alone evidence of actual malice. *Id.* at 25; *see also Satanic Temple, Inc. v. Newsweek Magazine,* 774 F. Supp. 3d 688, 705 (S.D.N.Y (2025) (failure to fact check not evidence of actual malice), *appeal filed* (25-868) (2d Cir. Apr. 11, 2025); *Montgomery,* 197 F. Supp. 3d at 268 (same). Plaintiff cites no evidence that Hachette did doubt, or had any reason to doubt, Higgins's reporting. *Chaiken v. VV Publ'g Corp.* 119 F.3d 1018, 1032 (2d Cir. 1997) (no malice where author 'was an 'established' writer with a sound reputation" and nothing "suggested that the article contained any falsity.").

Plaintiff fails to allege that either Defendant published with actual malice. Mot. 20-25; *St. Amant v. Thompson,* 390 U.S. 727, 732 (1968). Therefore, the Complaint must be dismissed.

## CONCLUSION

Defendants respectfully request that the Court grant their motion to dismiss Plaintiff's complaint with prejudice, and for such other relief as it deems just and proper.

Dated: March 16, 2026 **DAVIS WRIGHT TREMAINE LLP**

        */s/ Elizabeth A. McNamara*

        Elizabeth A. McNamara
        Leena M. Charlton
        1251 Avenue of the Americas, 42nd Floor
        New York, NY 10020
        Phone: (212) 489-8230
        Email: lizmcnamara@dwt.com
               leenacharlton@dwt.com

        *Attorneys for Defendants Eoin Higgins*
        *and Hachette Book Group, Inc.*