**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MATT TAIBBI,

                    Plaintiff,

      v.

EOIN HIGGINS and BOLD TYPE BOOKS, a
division of HACHETTE BOOK GROUP, INC.,

                  Defendants.

Case No. 1:25-cv-09511-GBD

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**RULE 54(d) MOTION FOR ATTORNEY'S FEES AND COSTS**

**DAVIS WRIGHT TREMAINE LLP**
Elizabeth A. McNamara
Leena M. Charlton
1251 Avenue of the Americas, 42ND Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
      leenacharlton@dwt.com

*Counsel for Defendants*

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS.................................................................................................................I

PRELIMINARY STATEMENT ....................................................................................................1

PROCEDURAL HISTORY ...........................................................................................................2

ARGUMENT.................................................................................................................................2

A.    New York Civil Rights Law § 70-a Applies to this Action.................................................3

B.    Defendants' Requested Fees Are Reasonable.....................................................................7

CONCLUSION............................................................................................................................16

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*215 W. 84th St Owner LLC v. Bailey*,
217 A.D.3d 488 (1st Dep't 2023) ..............................................................................................4

*A.G. v. N.Y.C. Dep't of Educ.*,
2021 WL 4896227 (S.D.N.Y. Oct. 19, 2021), *aff'd sub nom.*
*H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023) ....................................................11

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975), *superseded by statute as stated in Lackey v. Stinnie*,
604 U.S. 192 (2025) ..................................................................................................................5

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011) .........................................................................11

*An v. Despins*,
2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024), *appeal dismissed,*
2024 WL 4524742 (2d Cir. Aug. 13, 2024).............................................................................12

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
493 F.3d 110 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008).....8, 11

*Aristocrat Plastic Surgery, P.C. v. Silva*,
206 A.D.3d 26 (1st Dep't 2022) ............................................................................................3, 5

*Bobulinski v. Tarlov*,
2025 WL 872178 (S.D.N.Y. Mar. 20, 2005) ...........................................................................13

*Bobulinski v. Tarlov*,
758 F. Supp. 3d 166 (S.D.N.Y. 2024), *appeal withdrawn,*
2025 WL 1009663 (2d Cir. Mar. 31, 2025)...............................................................1, 5, 6, 7

*Button v. New York Times Co.*,
2025 WL 2643674 (S.D.N.Y. Sept. 15, 2025),
*appeal filed* (25-2634) (2d Cir. Oct. 22, 2025) ........................................................................5

*Capitol Records, Inc. v. MP3Tunes, LLC*,
2015 WL 7271565 (S.D.N.Y. Nov. 12, 2015).........................................................................12

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)....................................................................................................................6

*Charles v. Seinfeld*,
2022 WL 889162 (S.D.N.Y. March 25, 2022) ........................................................................12

*Deluca v. Bank of Tokyo-Mitsubishi UFJ*,
2007 WL 4563921 (S.D.N.Y. Dec. 18, 2007) .......................................................................10

*Doe 1 v. E. Side Club, LLC*,
2023 WL 4174141 (S.D.N.Y. June 23, 2023), *aff'd sub nom,*
2024 WL 1756106 (2d Cir. Apr. 24, 2024) ..........................................................................11

*Earth Flag Ltd. v. Alamo Flag Co*,
154 F. Supp. 2d 663 (S.D.N.Y. 2001).....................................................................................8

*Entral Grp. Int'l v. Sun Sports Bar Inc.*,
2007 WL 2891419 (E.D.N.Y. Sept. 28, 2007) .....................................................................12

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998)..................................................................................................14

*Goldman v. Abraham Heschel Sch.*,
227 A.D.3d 544 (1st Dep't 2024) ...........................................................................................5

*Grant v. Martinez*,
973 F.2d 96 (2d Cir. 1992).....................................................................................................14

*Grifols, S.A. v. Yu*,
2026 WL 836657 (S.D.N.Y. Mar. 26, 2026) ..........................................................................5

*Harrell v. Van der Plas*,
2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009)...........................................................................8

*Heilbut v. Cassava Scis., Inc.*,
778 F. Supp. 3d 551 (S.D.N.Y. 2025).................................................................................5, 6

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)...............................................................................................................15

*Herring Networks, Inc. v. Maddow*,
2021 WL 409724 (S.D. Cal. Feb. 5, 2021) ...........................................................................13

*Hinckley v. E.I. Du Pont De Nemours and Co.*,
583 F. Supp. a11 (E.D. pa. 1983)..........................................................................................10

*Immuno A.G. v. Moor-Jankowski*,
145 A.D.2d 114 (1st Dep't 1989), *aff'd*, 77 N.Y.2d 235 (1991) ............................................4

*In re Stock Exchs. Options Trading Antitrust Litig.*,
2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ........................................................................10

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ..................................................................................11

*Kesner v. Buhl*,
    590 F. Supp. 3d 680 (S.D.N.Y. 2022), *aff'd sub nom.*
    *Kesner v. Dow Jones & Co., Inc.*, 2023 WL 4072929 (2d Cir. June 20, 2023)........................6

*Merrill v. Onondaga Cnty.*,
    2026 WL 747093 (N.D.N.Y. Mar. 17, 2026) ................................................................6

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005)......................................................................................6

*Mugavero v. Arms Acres, Inc.*,
    2010 WL 451045 (S.D.N.Y. Feb. 9, 2010)..................................................................14

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
    551 F. Supp. 3d 408 (S.D.N.Y. 2021)..........................................................................6

*Nobile v. Watts*,
    No. 17-cv-597, ECF No. 78 (S.D.N.Y. Jan. 11, 2018),
    *aff'd*, 747 F. App'x 879 (2d Cir. 2018)......................................................................12

*Phyto Tech Corp. v. Givaudan SA*,
    2023 WL 1437714 (S.D.N.Y. Jan. 31, 2023) ...............................................................12

*Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*,
    2022 WL 17834945 (S.D.N.Y. Nov. 29, 2022), *report and recommendation adopted*,
    2023 WL 3004883 (S.D.N.Y. Feb. 23, 2023).................................................................12

*Reeves v. Associated Newspapers, Ltd.*,
    232 A.D.3d 10 (1st Dep't 2024), *leave to appeal dismissed,* 44 N.Y.3d 990 (2025)................4

*Reiter v. Metro. Transp. Auth. of N.Y.*,
    2004 WL 2072369 (S.D.N.Y. Sept. 10, 2004)................................................................8

*Restivo v. Hessemann*,
    846 F.3d 547 (2d Cir. 2017)....................................................................................11

*Richey v. Showtime Networks Inc.*,
    2026 WL 867264 (D. Del. Mar. 30, 2026) ...................................................................5

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ....................................................................................7

*Title Tracy Anderson Mind & Body, LLC v. Roup*,
    2023 WL 6890744 (C.D. Cal. Sept. 11, 2023) .............................................................13

*Tlacoapa v. Carregal*,
  386 F. Supp. 2d 362 (S.D.N.Y. 2005)................................................................................13

*Torres v. City of N.Y.*,
  2020 WL 6561599 (S.D.N.Y. June 3, 2020), *R. & R. adopted*,
  2020 WL 4883807 (S.D.N.Y. Aug. 20, 2020).....................................................................11

*Vista Outdoor, Inc. v. Reeves Family Tr.*,
  2018 WL 3104631 (S.D.N.Y. May 24, 2018) .......................................................................12

*Watson v. NY Doe 2*,
  2025 WL 2662306 (S.D.N.Y. Sept. 17, 2025), *appeal withdrawn*
  *sub nom. Watson v. Illinois Doe 1*, 2026 WL 1051983 (2d Cir. Feb. 26, 2026) .......................6

*Wells Fargo Tr. Co. v. Fast Colombia S.A.S.*,
  2023 WL 8591953 (S.D.N.Y. Oct. 16, 2023), *adopted*,
  2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) .......................................................................12

*Woulfe v. Universal City Studios LLC*,
  2024 WL 1110914 (C.D. Cal. Feb. 8, 2024)........................................................................15

*Wynn v. Chanos*,
  2015 WL 3832561 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017) ........13

*Zhang v. Zhang*,
  2021 WL 1154084 (S.D.N.Y. Mar. 26, 2021) .......................................................................11

**Statutes**

N.Y. Civil Rights Law §§ 70-a *et seq* .................................................................................. *passim*

N.Y. Civil Rights Law §§ 76-a *et seq* ...............................................................................3, 4, 7

**Other Authorities**

CPLR 3211 *et seq* ...........................................................................................................3, 4

Fed. R. Civ. P. 12(b)(6)...............................................................................................4, 6, 7, 15

Fed. R. Civ. P. 54 ..............................................................................................................1

L.R. 54.1 ..........................................................................................................................1

Defendants Eoin Higgins and Bold Type, an imprint of Basic Books Group, a division of Hachette Book Group, Inc. ("Hachette") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for attorney's fees pursuant to Fed. R. Civ. P. 54, L.R. 54.1, and N.Y. Civil Rights Law § 70-a(1)(a).

## PRELIMINARY STATEMENT

In February 2025, Hachette published *Owned: How Tech Billionaires on the Right Bought The Loudest Voices on the Left* by Eoin Higgins. The book explores tech billionaire influence in the media industry—particularly Elon Musk's purchase of Twitter and Marc Andreesen's investments in Substack—and the curious phenomenon of former leftwing journalists, including Glenn Greenwald and Matt Taibbi, aligning with these rightwing billionaires. Nine months later, in November 2025, Plaintiff Matt Taibbi sued Defendants for defamation *per se* based on the book. Taibbi alleged that various statements from the jacket and text were defamatory because they impliedly accused him of financial corruption. He sought compensatory and punitive damages, which he estimated to be no less than $1,000,000, as well as costs and attorney's fees. ECF No 1 ("Compl.") at ¶ 38. In a thorough and definitive opinion, this Court dismissed the complaint with prejudice on May 5, 2026, for failure to state a claim, as the challenged statements considered in context were all protected opinion, which cannot form the basis of a defamation claim. ECF No. 32.

Based on this dismissal, Defendants respectfully request they be awarded reasonable attorney's fees under the fee-shifting provision of the New York anti-SLAPP statute, New York Civil Rights Law § 70-a(1). *See Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 177-78 n.7, 182-189 (S.D.N.Y. 2024) (applying anti-SLAPP's fee provision in federal court), *appeal withdrawn,* 2025 WL 1009663 (2d Cir. Mar. 31, 2025). Plaintiff's action was a textbook SLAPP suit: looking to

silence and injure an opponent for nothing more than critiques and conclusions drawn from facts Plaintiff did not even challenge. Under New York's anti-SLAPP statute, Defendants Hachette and Higgins are entitled to mandatory attorney's fees in the amount of $178,732.50. This amount reflects the attorney's fees and costs actually paid and approved for payment in this case and is reasonable in light of the issues raised, counsels' rates and expertise, amount of hours worked, and the successful outcome of the case: dismissal without undergoing expensive discovery.

## PROCEDURAL HISTORY

On November 13, 2025, Plaintiff initiated this lawsuit, asserting one claim of defamation *per se*. On January 20, 2026, Defendants filed a motion to dismiss, arguing that the challenged statements were protected opinion and, in any event, Plaintiff had not pled actual malice. The parties agreed to a stay of discovery while the motion to dismiss was pending. In response to Defendants' motion, on February 3, 2026, Plaintiff filed an amended complaint. Defendants then filed a second motion to dismiss the amended complaint on February 17, 2026. The parties appeared—Defendants' counsel in person, and Plaintiff's counsel by phone—for an initial conference on February 19, 2026. The motion was fully briefed on March 16, 2026. Oral argument was held on March 25, 2026. On May 5, 2026, this Court dismissed Plaintiff's amended complaint and directed the clerk to enter judgment in favor of Defendants. *See* ECF No. 32. On May 6, 2026, the clerk entered judgment and closed the case. ECF No. 33. Defendants now file this motion for attorney's fees pursuant to New York's anti-SLAPP law.

## ARGUMENT

New York's anti-SLAPP law provides that "costs and attorney's fees *shall* be recovered upon a demonstration . . . that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." New York

Civil Rights Law § 70-a(1)(a) (emphasis added).  This Court should award Defendants their fees because as a matter of law Plaintiff failed to state a claim that the book contained actionable statements or defamatory implications.  Therefore, the action "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." *Id.*

### A.      New York Civil Rights Law § 70-a Applies to this Action

In November 2020, the New York State legislature expanded the state's anti-SLAPP law (codified in N.Y. Civil Rights Law §§ 70-a and 76-a and CPLR § 3211(g)) to "broaden" its scope and "afford greater protections to citizens" facing SLAPP suits.  *Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 28–29 (1st Dep't 2022) (citing *Mable Assets, LLC v. Rachmanov,* 192 A.D.3d 998, 1000 (2d Dep't 2021)).  Among the protections in the amended anti-SLAPP law is a mandatory award of costs and attorney's fees.  Section 70-a provides for a mandatory award of attorney's fees and costs, stating:

> costs and attorney's fees ***shall*** be recovered upon a demonstration . . . that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law[.]

N.Y. Civ. Rights Law § 70-a(1)(a) (emphasis added).  The law defines "action involving public petition and participation" in Section 76-a(1)(a) as "any communication in a place open to the public or a public forum in connection with an issue of public interest" or "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition."

N.Y. Civil Rights Law § 76–a(1)(a)(1) & (2).[1]  Section 76-a(1)(d) provides that "public interest" shall be construed "broadly" and includes "any subject other than a purely private matter."  *Id.* § 76-a(1)(d); *see also Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 22 (1st Dep't 2024) (observing that under the 2020 amendments, "'public interest' shall be broadly construed to embrace 'matters of political, social, or other concern to the community.'"), *leave to appeal dismissed,* 44 N.Y.3d 990 (2025).  "Simply put, the 2020 amendments expanded the scope of anti-SLAPP protections to encompass all public communications on any nonprivate matter."  *Reeves*, 232 A.D.3d at 18.[2]

To demonstrate its claims have a "substantial basis" under the anti-SLAPP law, a plaintiff must present "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact."  *Id.* at 22-23.  In other words, the claims must satisfy "more than [a] frivolous [standard] and more than the ordinary CPLR 3211(a)(7)[3] standard."  *Id*. at 21.  Therefore, a complaint that "fails to state a claim under CPLR 3211(a)(7) necessarily lacks a 'substantial basis in law.'"  *Id.* at 24 ("[D]oes a complaint which fails to state a claim also lack a 'substantial basis'?  We answer this question affirmatively.").  Put differently, if the Court dismisses an action involving public petition and participation for failure to state a claim—as here—the defendant is entitled to recover its attorney's fees and costs under Section 70-a(1)(a).  *Id.* (permitting defendant to collect attorney's fees under Section 70-a(1)(a) on motion to dismiss); *see also, e.g.*, *215 W.*

[1] Where appropriate, such as in defamation claims, Section 76-a also requires that a plaintiff in a SLAPP action show actual malice, *i.e.*, "that any communication which gives rise to the action was made with knowledge of falsity or with reckless disregard of whether it was false."  *Id.* § 76-a(2).

[2] Overall, this expanded scope of the anti-SLAPP law reflects a long history of New York courts consistently directing that early adjudication of lawsuits impinging on First Amendment rights is necessary to protect freedom of speech from the chilling effect of meritless litigation.  Indeed, as this Court observed more than three decades ago, "To unnecessarily delay the disposition of [such an] action is not only to countenance waste and inefficiency but to enhance the value of such actions as instruments of harassment and coercion inimical to the exercise of First Amendment rights." *Immuno A.G. v. Moor-Jankowski*, 145 A.D.2d 114, 128 (1st Dep't 1989), *aff'd*, 77 N.Y.2d 235 (1991).

[3] CPLR 3211(a) is the state court's equivalent to a federal Rule 12(b)(6) dismissal for failure to state a claim.

*84th St Owner LLC v. Bailey*, 217 A.D.3d 488, 488-89 (1st Dep't 2023); *Goldman v. Abraham Heschel Sch.*, 227 A.D.3d 544, 545, (1st Dep't 2024); *Aristocrat Plastic Surgery*, 206 A.D.3d at 32 (same).

Federal courts have found that the anti-SLAPP fee provision "is a substantive provision that does not conflict with a federal procedural rule" and can be applied in diversity actions on a motion to dismiss. *See, e.g.*, *Bobulinski*, 758 F. Supp. 3d at 177 n.7, 182-189 ("Here, however, the operative rule is not procedural."); *id.* at 188 (awarding anti-SLAPP fees on a motion to dismiss because "[t]o hold otherwise would put an additional onus on defendants in SLAPP suits, undermining the New York legislature's intent in broadening anti-SLAPP protections to protect defendants and prevent the chilling of speech") (citation omitted); *see Richey v. Showtime Networks Inc.*, 2026 WL 867264, at *4-5 (D. Del. Mar. 30, 2026) (Bibas, J., sitting by designation) (applying New York's anti-SLAPP that "gives the defendant a substantive right to costs and attorney's fees after showing that the plaintiff's claim lacks a substantial basis."); *Grifols, S.A. v. Yu*, 2026 WL 836657, at *3-6 (S.D.N.Y. Mar. 26, 2026) (Liman, J.) ("The Court now holds that New York's anti-SLAPP statute creates a substantive right that does not conflict with the Federal Rules of Civil Procedure and is thus applicable in federal court."); *Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551, 567–68 (S.D.N.Y. 2025) ("New York's anti-SLAPP law 'is doing no procedural work' in the instant case; it is merely defining the substantive standard for entitlement to a state-law remedy."); *Button v. New York Times Co.*, 2025 WL 2643674, at *21 (S.D.N.Y. Sept. 15, 2025) (finding Section 70-a is a substantive right that applies in federal court, but directing defendants to apply for fees using Rule 54), *appeal filed,* (25-2634) (2d Cir. Oct. 22, 2025); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) ("In an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of

5

court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." (cleaned up)), *superseded by statute as stated in Lackey v. Stinnie,* 604 U.S. 192 (2025); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991) ("[A] statute which permits a prevailing party in certain classes of litigation to recover fees" "embod[ies] a substantive policy" of the state. (citation omitted)); *see, e.g.*, *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) ("We apply New York substantive law to resolve the dispute regarding plaintiff's entitlement to attorney's fees.").[4]

Federal courts have also accepted the relation between anti-SLAPP's "substantial basis" standard and a motion to dismiss standard for failure to state a claim. A case dismissed for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), necessarily lacks a substantial basis in fact or law. *Bobulinski*, 758 F. Supp. 3d at 184 ("Logically, a complaint that fails to state a claim is, a fortiori, 'without a *substantial* basis in fact and law and could not be supported by a *substantial* argument for the extension, modification or reversal of existing law.'" (emphases in original) (quoting N.Y. Civ. Rights Law § 70-a(1)); *Heilbut*, 778 F. Supp. 3d at 570 ("the present action has adequately pleaded that the Defamation Action lacked a substantial basis in fact and law because Cassava's first amended complaint was dismissed for failure to state a claim."); *see also Watson v. NY Doe 2*, 2025 WL 2662306, at *18 (S.D.N.Y. Sept. 17, 2025), (granting defendants their fees, as plaintiff "has abused the judicial process and waged a protracted

---

[4] Recent federal court cases have demonstrated that New York's anti-SLAPP fee provision is applicable in diversity cases in federal court. However, this does represent a shift from earlier cases interpreting the same statute. *See Kesner v. Buhl*, 590 F. Supp. 3d 680, 701 (S.D.N.Y. 2022), *aff'd sub nom. Kesner v. Dow Jones & Co., Inc.*, 2023 WL 4072929 (2d Cir. June 20, 2023) (dismissing counterclaim for attorney's fees pursuant to Section 70-a); *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.,* 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021) (same); *Merrill v. Onondaga Cnty.*, 2026 WL 747093, at *6 (N.D.N.Y. Mar. 17, 2026) (denying Section 70-a fee award for dismissal at motion to dismiss stage).

legal battle over baseless claims"), *appeal withdrawn sub nom. Watson v. Illinois Doe 1*, 2026 WL 1051983 (2d Cir. Feb. 26, 2026).

Here, the anti-SLAPP law's fee provision is clearly applicable.  Plaintiff's lawsuit is an "action involving public petition and participation" as the claims were premised on statements in the nationally published book, *Owned*.  Writing and publishing a book that dissects tech billionaire influence on media platforms and the cooperation of various prominent journalists necessarily qualifies both as a "communication in a place open to the public or a public forum in connection with an issue of public interest" and "other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition."  N.Y. Civil Rights Law § 76–a(1)(a)(1) & (2); *Sarver v. Chartier*, 813 F.3d 891, 905 (9th Cir. 2016) (The First Amendment "safeguards the storytellers and artists who take the raw materials of life—including the stories of real individuals, ordinary or extraordinary—and transform them into art, be it articles, books, movies, or plays."). And Plaintiff's complaint clearly lacked a substantial basis, which is demonstrated by this Court's dismissal pursuant to Defendants' Rule 12(b)(6) motion.  *See Bobulinski*, 758 F. Supp. 3d at 184; ECF No. 32.

In short, because Section 70-a applies in federal court and because Defendants' Rule 12(b)(6) motion was granted, Defendants are entitled to reasonable attorney's fees.

### B.    Defendants' Requested Fees Are Reasonable

This Court should award Defendants $178,732.50 in attorney's fees incurred in the defense of this matter because those fees are reasonable.

In calculating the amount of attorney's fees to award, the Second Circuit has adopted the "presumptively reasonable fee" standard, which requires the court to calculate "the number of

hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Harrell v. Van der Plas*, 2009 WL 3756327, at *1 (S.D.N.Y. Nov. 9, 2009) (Lynch, J.) (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110, 111–12, 117–18 (2d Cir. 2007) (noting that methodology of calculating the "presumptively reasonable fee" standard and the older "lodestar" standard are substantially the same), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008). "[A]n attorney's customary rate is a significant factor in determining a reasonable rate. Indeed, as a logical matter, the amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate." *Reiter v. Metro. Transp. Auth. of N.Y.*, 2004 WL 2072369, at *5 (S.D.N.Y. Sept. 10, 2004). In setting a reasonable attorneys' fee, courts should consider the skill of the attorneys, the amount of legal work performed by the prevailing party's attorneys, and the results achieved. *Earth Flag Ltd. v. Alamo Flag Co*, 154 F. Supp. 2d 663, 669 (S.D.N.Y. 2001). Each of these factors favors awarding fees here.

### *Hourly Rates*

*First*, Defendants are represented by Davis Wright Tremaine, an AmLaw 100 law firm with more than 600 lawyers in the United States. It is widely known for its work in the fields of First Amendment, media, and entertainment law and represents numerous prominent media companies and publishers, including newspapers, publishing houses, television networks, documentary producers, and content producers of various stripes. Law360 has named Davis Wright Tremaine's media and entertainment group a Practice Group of the Year nine of the last ten years, and the 2026 edition of Best Law Firms named Davis Wright Tremaine "Law Firm of the Year" for First Amendment Litigation. Declaration of Elizabeth A. McNamara ("McNamara Decl.") ¶ 5. In setting its rates, Davis Wright Tremaine relies upon annual survey data compiled independently by one of the "Big Four" national accounting firms. *Id*. at ¶ 11. Davis Wright

Tremaine's billing rates are generally significantly lower than the midpoint range of rates of 70 other large law firms with headquarters or branch offices in New York. *Id.* For example, the median billing rate for partners in large-sized firms with same years of experience as Ms. McNamara was $1,750 per hour in 2025—significantly higher than the rate charged here. *Id.* The same survey shows that the median rate charged for Class of 2017 associates in large-sized firms was $1,155 per hour, again much higher than the 2025 rate of Ms. Charlton. *Id.*

Two DWT lawyers worked on this matter, partner Elizabeth A. McNamara, and senior associate Leena Charlton. Elizabeth A. McNamara is a partner in DWT's New York office and a 1981 Order of the Coif graduate of the University of North Carolina School of Law School. *Id.* ¶ at 6. She has over 35 years of trial and litigation experience, and specializes in the representation of book publishers, newspapers, magazines, and broadcasters involving intellectual property issues and the First Amendment. *Id.* She is the former chair of the New York City Bar Committee on Communications and Media Law, and the former East Coast Representative for the Forum on Communications Law. *Id.* Throughout her career, she has received numerous accolades. Among others, in 2022, she was named "Lawyer of the Year" for First Amendment Law (New York) by Best Lawyers. *Id.* In 2021, she was named one of Hollywood's Top 100 Attorneys by The Hollywood Reporter. She has also been ranked in Media & Entertainment: First Amendment Litigation by Chambers and Partner, an independent professional legal ranking company, for 22 years. She was an adjunct professor at Columbia Journalism School in Media Law from 2021 through 2022. *Id.* Her standard hourly rate in 2026 is $1,355 and was $1,210 in 2025. *Id.* at ¶ 7. More information concerning her relevant experience and qualifications is available at https://www.dwt.com/people/m/mcnamara-elizabeth-a. *Id.* Ex. A.

9

Leena Charlton is an associate in DWT's New York office who worked on this matter.  Ms. Charlton graduated from Harvard Law School in 2017 and has been practicing First Amendment and libel law since 2019.  Ms. Charlton previously served as a law clerk at the U.S. District Court for the Eastern District of New York, and as a Legal Fellow at the Knight First Amendment Institute.  She routinely represents media companies in First Amendment, intellectual property, and media litigation, including handling complex and high-profile defamation litigations.  *Id.* at ¶ 8.  Ms. Charlton's standard hourly rate in 2026 is $910 and was $825 in 2025.  *Id.* at ¶ 9.  More information concerning Ms. Charlton's relevant experience and qualifications is available at https://www.dwt.com/people/c/charlton-leena. *Id.* at  Ex. B.

Megan Duffy has been a paralegal in the media group at Davis Wright Tremaine for over 25 years.  Her standard hourly rate is $565 in 2026 and was $490 in 2025.  *Id.* at  ¶ 10 & Ex. C.

Defendants, however, seek reimbursement based on the actual rates charged by DWT for this matter, as set forth more fully in the McNamara Declaration.  These rates are reasonable in comparison with rates charged by attorneys with similar qualifications at other firms.  In fact, they are substantially below what willing clients typically pay in similar litigation, as well as the rates that New York courts have approved, as this matter was subject to rates approved by Defendants' insurer.  Ms. McNamara's rate for this matter was $675 in 2025, and $735 in 2026.  Ms. Charlton's rate for this matter was $460 in 2025 and $545 in 2026.  The paralegals' time was billed out at $190-$210.  These rates represents a significant discount off the attorneys' normal billing rates of $910–$1,335, which themselves represent the starting point for determining reasonable market rates.[5]

---

[5] *See Hinckley v. E.I. Du Pont  De Nemours and Co.*, 583 F. Supp. 11, 13 (E.D. Pa. 1983); *In re Stock Exchs. Options Trading Antitrust Litig.*, 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006) (finding an "attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of" a reasonable hourly rate).  *Deluca v. Bank of Tokyo-Mitsubishi UFJ*, 2007 WL 4563921, at *5 (S.D.N.Y. Dec. 18, 2007) (finding fact that a "paying corporate client, able

*Second*, to determine a reasonable hourly rate, the Second Circuit has directed that district "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). "In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors;[6] it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. "The party seeking fees bears the burden of demonstrating that its counsel's rates are reasonable" by "produc[ing] evidence, in addition to the attorneys' own affidavits, that the rates are consistent with prevailing rates in the District for lawyers of comparable skill, experience and reputation." *Torres v. City of N.Y.*, 2020 WL 6561599, at *4 (S.D.N.Y. June 3, 2020), *R. & R. adopted*, 2020 WL 4883807 (S.D.N.Y. Aug. 20, 2020). "Complex cases requiring particular attorney skills and experience may command higher attorney rates." *Id.* at *4.

---

to negotiate a fee-rate discount with its law firm," agreed to pay rates is evidence that they are reasonable); *Doe 1 v. E. Side Club, LLC*, 2023 WL 4174141, at *6 (S.D.N.Y. June 23, 2023) (finding "the fact that those are the rates that were actually charged to and paid by Defendants" "confirmed" that rates were reasonable), *aff'd sub nom,* 2024 WL 1756106 (2d Cir. Apr. 24, 2024); *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 2011 WL 1002439, at *6 (S.D.N.Y. Mar. 16, 2011) ("The determination of reasonable hourly rates is a factual issue committed to the court's discretion, and is typically defined as the market rate a 'reasonable, paying client would be willing to pay.'") (quoting *Arbor Hill*,522 F.3d 182, 190 (2d Cir. 2008) (summary order).

[6] "The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). "A district court need not recite and make separate findings as to all twelve Johnson factors, provided that it takes each into account in setting the attorneys' fee award." *A.G. v. N.Y.C. Dep't of Educ.*, 2021 WL 4896227, at *4 (S.D.N.Y. Oct. 19, 2021), *aff'd sub nom. H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023) (*per curiam*); *see Zhang v. Zhang*, 2021 WL 1154084, at *2 (S.D.N.Y. Mar. 26, 2021) ("A court does not need to make specific findings as to each factor as long as all are considered.").

Davis Wright Tremaine's hourly rates should therefore be measured against the reasonable hourly rates for New York, where far higher rates for AmLaw 100 attorneys are routinely approved. *See An v. Despins*, 2024 WL 1157281, at *2, 4 (S.D.N.Y. Mar. 18, 2024) (finding 2023 partner hourly rate of $1,760, counsel hourly rate of $1,440, and associate hourly rate of $895 to be reasonable), *appeal dismissed,* 2024 WL 4524742 (2d Cir. Aug. 13, 2024); *Wells Fargo Tr. Co. v. Fast Colombia S.A.S.*, 2023 WL 8591953, at *7 (S.D.N.Y. Oct. 16, 2023) (finding partner hourly rates of $1,370 to $1,750 and associate hourly rates of $1,060 to $1,240 to be reasonable), *adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023); *Vista Outdoor, Inc. v. Reeves Family Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (finding that partner hourly rates of $1,170 and $1,260 were reasonable and "not excessive in the New York 'big firm' market"); *Phyto Tech Corp. v. Givaudan SA*, 2023 WL 1437714, at *7 n.8 (S.D.N.Y. Jan. 31, 2023) (in trade secrets and misappropriation case, holding that rates of partners ranging from $897 to $1,079 were reasonable); *Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, 2022 WL 17834945, at *2 (S.D.N.Y. Nov. 29, 2022) (approving attorneys' billed rates, which included $1,600 rate for partner), *report and recommendation adopted*, 2023 WL 3004883 (S.D.N.Y. Feb. 23, 2023); Ex. G to Declaration of Joshua Weisser at 7, *Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, No. 19-cv-2523 (S.D.N.Y. Jan. 27, 2022), ECF No. 151-7 (identifying $1,600 rate).[7] Thus, defense counsel's hourly rates are more than reasonable here.

---

[7] Even more relevant here, Judge Alison Nathan in the Southern District of New York recently surveyed the ranges of hourly rates New York courts have approved in copyright litigation, which is an important component of DWT's media litigation practice and a similar area of specialization. *See Charles v. Seinfeld*, 2022 WL 889162 (S.D.N.Y. March 25, 2022). In copyright cases litigated in 2018 and 2019—several years before this case—the partner rates approved by New York courts ranged from $700 to $900, the approved associate rates from $465 to $575, and approved paralegal rates from $150 to $250. *Id.* at *4–5. The hourly rates charged by DWT in this case are at or below those ranges. *See also Nobile v. Watts*, No. 17-cv-597, ECF No. 78 at 6 (S.D.N.Y. Jan. 11, 2018) (Forrest, J.) (finding in copyright case that partner rate of $575 and associate rate of $438 charged by other New York-based Davis Wright Tremaine attorneys, as well as other firms' rates of $815-$830, were reasonable), *aff'd*, 747 F. App'x 879 (2d Cir. 2018); *Capitol Records, Inc. v. MP3Tunes, LLC*, 2015 WL 7271565, at *4 (S.D.N.Y. Nov. 12, 2015) (Pauley, J.) (finding partner rates from $517.50 to $720 and associate rates up to $450 to be reasonable in copyright action; *Entral*

***Third***, the fees sought here by Davis Wright Tremaine are in keeping with fees routinely awarded in defamation cases and other cases dismissed under anti-SLAPP laws.  *See Bobulinski v. Tarlov*, 2025 WL 872178, at \*2 (S.D.N.Y. Mar. 20, 2005) (finding partner hourly rate of $1,338.75 and associate hourly rates of $722.50 and $637.50 to be reasonable in defamation action); *Title Tracy Anderson Mind & Body, LLC v. Roup*, 2023 WL 6890744, at \*2–3 (C.D. Cal. Sept. 11, 2023) (finding 2023 partner hourly rates of $1,010–$1,065, counsel hourly rate of $1,000, and associate hourly rates of $760 and $655 to be reasonable in case involving copyright infringement and other claims); *Herring Networks, Inc. v. Maddow*, 2021 WL 409724, at \*5, 7 (S.D. Cal. Feb. 5, 2021) (finding 2019–2020 partner hourly rates of $1,050–$1,150, senior associate hourly rate of $720, and mid-level associate hourly rate of $470 to be reasonable in defamation case); *Wynn v. Chanos*, 2015 WL 3832561, at \*2–3 (N.D. Cal. June 19, 2015) (finding partner hourly rates of $920–$1,085 and associate hourly rates of $640–$710 to be reasonable in anti-SLAPP defamation case), *aff'd*, 685 F. App'x 578 (9th Cir. 2017).

### *Hours Expended*

In addition to the rates being reasonable, the hours spent defending the matter were reasonable.  To determine the compensable hours, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."

---

*Grp. Int'l v. Sun Sports Bar Inc.*, 2007 WL 2891419, at \*10 (E.D.N.Y. Sept. 28, 2007) (Go, M.J.) (finding, twelve years ago, that partner rate of $560 and associate rates of $340 to $360 were "reasonable and within the range of rates charged for copyright infringement cases in New York City").

*Gierlinger*, 160 F.3d at 876 (internal quotation marks and citation omitted). "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same). Defendants' request is reasonable for several reasons.

In defense of this matter, Defendants filed two motions to dismiss for the original and the amended complaints, and attended two court conferences, including oral argument. The motions to dismiss required reading the book at issue, assessing and investigating the multiple factual foundations for the challenged critiques and addressing numerous issues in the defective complaint. For example, defense counsel had to address 1) Plaintiff's arguments to remove the statements from the context in which they appeared, 2) that the statements in context were protected opinion, 3) that the Defendants did not publish the book with actual malice, 4) and that Defendants did not endorse or intend a defamatory meaning from the book, and in fact disclaimed such implications in numerous interviews post-publication. Given the issues raised by the Complaint, counsel reasonably spent 312.90 hours defending the action. A full set of the billing records with time entries is attached to the Declaration of Elizabeth A. McNamara as Exhibit D. The DWT attorneys' specialized experience in media and First Amendment law was necessary to efficiently and effectively litigate the complex defamation issues in this case. Defendants' attorneys managed this case efficiently. Defendants' law firm staffed this matter judiciously, with just one partner and one associate. McNamara Decl. ¶ 12. Ms. Charlton researched and drafted all filings in this matter. *Id.* ¶ 13. Ms. McNamara took a supervisory role, editing the briefs, preparing

14

for and arguing the motion to dismiss, and formulating the overall litigation strategy, thereby accruing fewer hours at her higher rate. *Id.*

Recent cases involving similar motions to dismiss and the application of state anti-SLAPP laws demonstrate that the hours expended in this case were reasonable. For example, in *Woulfe v. Universal City Studios LLC*, 2024 WL 1110914 (C.D. Cal. Feb. 8, 2024), the Court found that 416.9 hours was a reasonable number of hours for briefing and arguing an anti-SLAPP motion to dismiss. *Id.* at *9-10 (finding that a 20% cut to counsel's 521.1 billed hours resulted in a reasonable hour amount for the case). The court noted that the hours were necessary because the motion to dismiss "dealt with a variety of issues, spanning from the applicability of the anti-SLAPP statute to the present case, to numerous arguments challenging the sufficiency of Plaintiff's complaint." *Id.*

### *Case Outcomes*

Counsel's success on the matter is further evidence that counsel's work was reasonable. Defendants' counsel was entirely successful, and their motion practice resulted in the dismissal of all of Plaintiff's claims. The Supreme Court has explained that where a prevailing party "has obtained excellent results, [their] attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). This is particularly significant because Plaintiffs were seeking significant monetary damages, at least $1,000,000. *See* Compl. at ¶ 38.

---

This lawsuit is an "action involving public petition and participation" and, as demonstrated by this Court's Rule 12(b)(6) dismissal, "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension,

15

modification or reversal of existing law." Therefore, Defendants are entitled to their reasonable attorney's fees and costs.

## CONCLUSION

Defendants respectfully request that the Court grant their reasonable costs and attorney's fees under New York's anti-SLAPP statute.

Dated: May 20, 2026                    **DAVIS WRIGHT TREMAINE LLP**

*/s/ Elizabeth A. McNamara*

Elizabeth A. McNamara
Leena M. Charlton
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
       leenacharlton@dwt.com

*Attorneys for Defendants Eoin Higgins*
*and Hachette Book Group, Inc.*

16

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS</u>

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c).  According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 5,468.

I certify under penalty of perjury that the foregoing is true and correct.

*/s/ Elizabeth A. McNamara*
Elizabeth A. McNamara
