**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATT TAIBBI, <br><br> Plaintiff, <br><br> v. <br><br> EOIN HIGGINS and BOLD TYPE BOOKS, a division of HACHETTE BOOK GROUP, INC., <br><br> Defendants. | Case No. 1:25-cv-09511-GBD |

**DECLARATION OF ELIZABETH A. MCNAMARA IN SUPPORT OF DEFENDANTS'**
**MOTION FOR ATTORNEYS' FEES AND COSTS**

I, Elizabeth A. McNamara, declare as follows:

1.      I am a partner at Davis Wright Tremaine LLP, counsel to Defendants Eoin Higgins and Bold Type, an imprint of Basic Books Group, a division of Hachette Book Group, Inc. (the "Defendants").  I am lead counsel in this matter and am fully familiar with the facts and circumstances of the case, and with the contents of this Declaration.  I make this Declaration in support of Defendants' motion for reasonable attorneys' fees and costs under the New York anti-SLAPP statute, N.Y. Civil Rights Law § 70-a(1).

2.      Davis Wright Tremaine LLP ("DWT") was retained by Defendants as lead outside counsel for this matter.

3.      In this motion, Defendants seeks to recover attorney's fees and costs for services rendered by two attorneys at DWT—myself and one senior associate (Leena Charlton). Defendants also seeks to recover fees for services rendered by DWT's paralegals.

4.      As set forth in detail below, Defendants are requesting a total of $178,732.50 in attorneys' fees, costs, and disbursements to defend this action.

**DWT's Expertise and Billing Rates**

5.      DWT is an AmLaw 100 law firm, with approximately 600 lawyers in the United States.  DWT is widely known for its top work in the fields of First Amendment, copyright, media, and entertainment law.  The firm is annually recognized by Chambers USA, Best Lawyers in America, U.S. News & World Report and others for its First Amendment, media, and public records litigation practice; in fact, U.S. News and Best Lawyers recognized DWT as 2022 Law Firm of the Year in Media Law, and Law360 has named DWT as a national "Practice Group of the Year" in Media & Entertainment Law for the eight of the past nine years.  DWT is based in Seattle, and has offices in Oregon, California, New York, Illinois, Virginia, and Washington, D.C.  The firm represents numerous prominent media companies and publishers in libel disputes and other matters.

6.      I served as lead counsel on this matter.  I have over 35 years of media litigation experience.  Since graduating Order of the Coif from the University of North Caroline Law School in 1981, I have represented book publishers, newspapers, magazines, and broadcasters involving intellectual property issues and the First Amendment.  I am the former chair of the New York City Bar Committee on Communications and Media Law, and the former East Coast Representative for the Forum on Communications Law.  Throughout my career, I have received numerous accolades. Among others, in 2022, I was named "Lawyer of the Year" for First Amendment Law (New York) by Best Lawyers.  In 2021, I was named one of Hollywood's Top 100 Attorneys by The Hollywood Reporter.  I have also been ranked in Media & Entertainment: First Amendment Litigation by Chambers and Partner, an independent professional legal ranking company, for 22 years.  I was

also an adjunct professor at Columbia Journalism School in Media Law from 2021 through 2022. A true and correct copy of my firm biography is attached as **Exhibit A**.

7.    My standard hourly rate was $1,355 in 2026 and $1,210 in 2025.  Per the firm's agreement with Hachette's insurer for this matter, my discounted hourly rate for this matter was $675 per hour in 2025 and $735 hour in 2026.

8.    Leena Charlton is a senior media associate at DWT's New York office.  Ms. Charlton graduated from Harvard Law School in 2017.  She has worked at national ranked law firms since graduating.  In addition, she was a legal fellow at the Knight First Amendment Institute from 2019 to 2020.  She clerked in the U.S. District Court for the Eastern District of New York in 2021-2022.  She routinely represents media companies in First Amendment, intellectual property, and media litigation, including handling numerous complex and high-profile defamation litigations.  A true and correct copy of her firm biography is attached as **Exhibit B**.

9.    Ms. Charlton's standard hourly rate in 2026 is $910 and was $825 in 2025.  Her discounted rate for this matter was $460 in 2025 and $545 in 2026.

10.    Different paralegals assisted with this matter although only one assisted on any given assignment.  Megan Duffy is a paralegal with over 25 years of experience.  Her standard hourly was $460 in 2025 and $545 in 2026. Her discounted hourly rates for this matter was $190 to $210.  A true and correct copy of her firm biography is attached as **Exhibit C**.  Caroline Miks, another paralegal, also assisted on this matter on occasion.

11.    Based on a review of the case law as cited in the accompanying Memorandum of Law, the discounted hourly rates charged by the DWT counsel and paralegals in this case are well within the range of, if not below, the median rates for attorneys with comparable tenures at peer firms in the New York City legal community.  This is confirmed by annual surveys compiled

independently by the Big Four accounting firms, which show that DWT's billing rates for partners and associates are generally well below the median rates in the New York City area for partners and associates of similar experience in large-sized firms. For example, the median billing rate for partners in large-sized firms with my years of experience was $1,750 per hour in 2025. The survey data shows that, for the Class of 2017, the median billing rate was $1,155 per hour in 2025. The rates described above are particularly reasonable in light of the DWT counsels' experience, skill, and reputation in First Amendment Litigation and defamation cases specifically.

### The Number of Hours Worked Was Reasonable

12.    DWT staffed this matter efficiently, with one partner and one associate. We were able to take advantage of our significant experience in litigating similar defamation actions when drafting the motion to dismiss.

13.    Because of her lower billing rate, Ms. Charlton researched and drafted the key documents and filings in this matter. I undertook a supervisory role, editing the briefs, preparing for and arguing the motion to dismiss, and formulating the overall litigation strategy, thereby accruing fewer hours at my relatively higher rate.

14.    In drafting the motion to dismiss, DWT first investigated the Plaintiff's claims and defenses. This activity was complicated by several factors, including the length of the book at issue. DWT read the book, as well as the numerous resources and articles cited in support of Mr. Higgins's statements, to determine the context of the challenged statements and viability of Plaintiff's claims. Defendants ultimately relied on those documents in arguing both that the challenged statements were protected opinion and that Plaintiff had failed to allege actual malice. After reviewing these voluminous materials, DWT then prepared a motion to dismiss with thorough supporting papers. After Plaintiff filed an Amended Complaint, DWT reviewed and

assessed the changes in the Complaint and then prepared and filed a second motion to dismiss.  We also prepared for and conducted oral argument on the motion.

15.    These rates and the total hours associated with representing Defendants in connection with this litigation was particularly reasonable in light of the cause of action and publication at issue, as well as DWT's professionals' experience, skills, reputations, and the outcome that was achieved.

16.    As a standard billing practice, DWT attorneys keep contemporaneous daily time diaries that are entered into the firm's billing system as computerized records ("pro forma statements").  These *pro forma* statements list the date the service was rendered, the lawyer code, the amount of time billed in one-tenth hour increments, the amount to be billed based on historic billing rates, a brief description of the service rendered, and other administrative information.  The *pro forma* statements are used as the raw data from which final bills are generated.  As the responsible attorney for Defendants, I reviewed all of the *pro forma* statements

17.    As to costs, no costs were incurred in connection with the motion to dismiss.

18.    I am attaching as **Exhibit D** true and correct copies of billing statements in this matter.  A redacted version of Exhibit D has been filed on the public docket, while an unredacted version with redactions has been filed *ex parte* for the Court's review.  In the public version, the descriptions of the services rendered, which include attorney client information and attorney work product, have been redacted, so as not to waive the privilege.

6

19.     Accordingly, Defendants respectfully request that the Court award them $178,732.50 in attorney's fees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 20, 2026

/s/ Elizabeth A. McNamara
Elizabeth A. McNamara