UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATT TAIBBI,

Plaintiff,

- against -

EOIN HIGGINS and BOLD TYPE BOOKS, *a Division of Hachette Book Group, Inc.*,

Defendants.

25-CV-9511 (GBD) (RWL)

**REPORT AND RECOMMENDATION: TO HON. GEORGE B. DANIELS MOTION FOR ATTORNEYS' FEES (DKT. 37)**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Matt Taibbi ("Plaintiff") brought a defamation claim against Defendants Eoin Higgins and Bold Type Books (together, "Defendants"). The case was dismissed for failure to state a claim. Now before the Court is Plaintiff's motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d). The motion is premised on New York's anti-SLAPP statute, codified at section 70-a of the New York Civil Rights Law, which mandates payment of damages, including attorneys' fees, to defendants in certain actions involving public petition and participation that lack a substantial basis in law and fact. For the reasons set forth below, the motion should be DENIED without prejudice.

## Factual And Procedural Background

Plaintiff, an author and journalist, initiated this defamation action against Defendants on November 13, 2025. (Dkt. 1.) In his original Complaint, and again in an Amended Complaint filed on February 3, 2026, Plaintiff alleged that statements made in *Owned: How Tech Billionaires Bought the Loudest Voices on the Left*, a book authored

by Eoin Higgins and published by Bold Type Books, were defamatory per se. (Dkt. 22 ("Am. Compl.").) According to Plaintiff, the statements falsely accuse him of "dishonesty, corruption, and unethical conduct in his chosen profession." (*Id.* ¶ 4.)

In a decision filed on May 5, 2026, Judge Daniels found that the statements identified in the Amended Complaint were non-actionable opinion, and Plaintiff therefore "failed to adequately allege a defamatory statement or implication." (Dkt. 32 at 13.) Accordingly, Judge Daniels granted Defendants' motion to dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(6). (*Id.*)

On May 20, 2026, Defendants filed the instant Rule 54(d) motion for attorneys' fees based on New York's anti-SLAPP law, codified in part at N.Y. Civil Rights Law § 70-a ("Section 70-a") (Dkt. 37.) Defendants filed a memorandum of law and declaration in support of the motion. (Dkts. 38 ("Mem."), 39.) Plaintiff filed his opposition on June 2, 2026. (Dkt. 42 ("Opp.").) Defendants replied in support of their motion on June 9, 2026. (Dkt. 45 ("Reply").) On June 18, 2026, Plaintiff filed a letter providing supplemental authority for the Court's consideration. (Dkt. 46.) The Court heard oral argument on the motion on October 5, 2026. (Dkts. 47, 48.)

**Section 70-a**

Strategic lawsuits against public participation, also known as "SLAPP" suits, refer to certain types of "libel litigation and other speech-restrictive litigation" that may have a "chilling effect" on free-speech rights. *La Liberte v. Reid*, 966 F.3d 79, 85 (2d Cir. 2020); *accord Sweigert v. Goodman*, No. 18-CV-8653, 2021 WL 1578097, at *1 (S.D.N.Y. Apr. 22, 2021) ("SLAPP lawsuits are characterized as having little legal merit but are filed nonetheless to burden opponents with legal defense costs and the threat of liability and

to discourage those who might wish to speak out in the future") (cleaned up).[1] Acknowledging that "the threat of personal damages and litigation costs can be and has been used as a means of harassing, intimidating or punishing individuals … who have involved themselves in public affairs," New York enacted its anti-SLAPP law in 1992, which, among other things, provided defendants facing SLAPP suits with mechanisms to obtain expedited dismissal, damages, and attorneys' fees. 1992 N.Y. Sess. Laws ch. 767 (McKinney). As originally enacted, the anti-SLAPP statute applied only to claims brought by public applicants or permittees and gave courts discretion as to whether to award fees. *See id.*; *see also Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 17, 218 N.Y.S.3d 19 (1st Dep't 2024) (describing original statutory scheme).

In 2020, the New York Legislature amended the anti-SLAPP law "to broaden the applicable standards and to provide additional procedural rights to make those standards effective," including by making attorneys' fees mandatory. *Carroll v. Trump*, 590 F. Supp.3d 575, 580 (S.D.N.Y. 2022); *see* 2020 N.Y. Sess. Laws ch. 250 (McKinney). As amended, Section 70-a(1) provides that "a defendant in an action involving public petition and participation, as defined in [N.Y. Civ. Rights Law § 76-a], may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action[.]" The statute's subsections outline the required showing for an award of (a) costs and attorneys' fees,

---

[1] This opinion uses a "(cleaned up)" parenthetical to indicate that internal quotation marks, brackets, citations, emphases, or combinations thereof have been omitted from the quoted source. Any further alterations or emphases added to the quoted source by this Court are noted in a separate parenthetical.

(b) "other compensatory damages," and (c) punitive damages. With respect to costs and fees, the law provides that:

> costs and attorney's fees shall be recovered upon a demonstration, including an adjudication pursuant to [N.Y. C.P.L.R. §§ 3211(g), 3212(h)], that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law.

N.Y. Civ. Rights Law § 70-a(1)(a). The two procedural sections mentioned, N.Y. C.P.L.R. §§ 3211(g) and 3212(h), offer special procedures to secure expedited dismissal in SLAPP suits. They "flip the burden of proof" typically applicable at the dismissal or summary judgment stage, such that "once the movant establishes that the plaintiff's action is a SLAPP suit, the motion to dismiss 'shall' be granted unless the plaintiff demonstrates that the cause of action has a substantial basis." *Reeves*, 232 A.D.3d at 17.

## Discussion

Defendants' motion and the parties' briefing raise several issues. First is the threshold question of whether Section 70-a's fee-shifting provision applies in federal court. If it does, the question becomes whether the statute allows a SLAPP defendant to obtain those fees by motion after a dismissal for failure to state a claim, rather than by a separate action, claim, cross claim, or counterclaim. If the answer to that question is "yes," the Court can turn to the merits and consider whether a fee award is warranted, and, if so, its amount. But if the statute does not allow for a post-dismissal motion to recover fees, the Court may only reach the merits if Rule 54 displaces that limitation. As explained in the following analysis, the Court concludes that Section 70-a creates a cause of action for "damages, including costs and attorneys' fees" that may be pursued in federal

court, but not by a post-dismissal motion under Rule 54(d). As such, Defendants' Rule 54(d) motion for fees is procedurally improper and should be denied without prejudice.

## I. Section 70-a Applies In Federal Court

According to Defendants, Section 70-a "is a substantive provision that does not conflict with a federal procedural rule and can be applied in diversity actions" in federal court.[2] (Mem. at 5.) Plaintiff disagrees.[3] Cases decided in the wake of the statute's 2020 amendment questioned the law's federal applicability. *See, e.g.*, *National Academy of Television Arts & Sciences, Inc. v. Multimedia System Design, Inc.*, 551 F. Supp.3d 408, 431-32 (S.D.N.Y. 2021); *Kesner v. Buhl*, 590 F. Supp.3d 680, 701 (S.D.N.Y. 2022); *Prince v. Intercept*, 634 F. Supp.3d 114, 142 (S.D.N.Y. 2022). Now, however, the clear consensus is that anti-SLAPP fees are available in federal court. *See*, *e.g.*, *Bobulinski v. Tarlov*, 758 F. Supp.3d 166, 188 (S.D.N.Y. 2024) (Section 70-a's "provision for attorney's fees applies in federal court"); *Heilbut v. Cassava Sciences, Inc.*, 778 F. Supp.3d 551, 569 (S.D.N.Y. 2025) ("the substantive cause of action created by New York's anti-SLAPP statute may be brought in federal court"); *Grifols, S.A. v. Yu*, No. 24-CV-576, 2026 WL 836657, at *6 (S.D.N.Y. Mar. 26, 2026) ("New York's anti-SLAPP statute creates a substantive right that … is thus applicable in federal court"). The Court joins that consensus.

---

[2] Defendants posit that the Second Circuit "resolved" this issue in *Satanic Temple, Inc. v. Newsweek Digital LLC*, 177 F.4th 202 (2d Cir. 2026). (Reply at 1.) Not so. *Satanic Temple* dealt with a different provision of New York's anti-SLAPP regime: Section 76-a, which imports a heightened standard of fault in SLAPP defamation claims. *Id.* at 211-12.

[3] Plaintiff's briefing does not explicitly challenge Section 70-a's availability in federal court. Instead, Plaintiff's brief argues that Rule 54 motion is not a proper mechanism by which to obtain Section 70-a fees. (*See generally* Opp. at 2-4.) When asked at oral argument whether Plaintiff concedes the statute's federal applicability, Plaintiff clarified that he does not and instead opposes Defendants' motion on both points.

It is a well-known refrain that "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Substantive law "governs the rights and obligations of individuals," while procedural law outlines "the judicial process for enforcing rights and duties recognized by substantive law." *Gonzalez v. United States*, 80 F.4th 183, 193 (2d Cir. 2023) (cleaned up). One method of drawing this distinction is to "determine whether [a Federal Rule of Civil Procedure] answers the question in dispute. If it does, it governs – New York's law notwithstanding – unless it exceeds statutory authorization or Congress's rulemaking power." *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 398 (2010) (cleaned up); *see also La Liberte*, 966 F.3d at 87 (applying *Shady Grove* to find California's anti-SLAPP law not applicable in federal court). The Court may "wade into *Erie*'s murky waters" and decide if the state law is substantive only if no applicable, valid Federal Rule exists. *Shady Grove*, 559 U.S. at 398.

The overall question raised by the instant motion is whether Defendants, having successfully moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), are entitled to attorneys' fees. No Federal Rule of Civil Procedure answers that question.[4] New York's anti-SLAPP law does: fees must be awarded to SLAPP Fee Applicants "upon a demonstration … that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law

[4] As discussed in greater detail below, Rule 54(d)(2) governs how requests for attorneys' fees are made, but it does not specify in what circumstances a party is entitled to such an award. *See* Fed. R. Civ. P. 54(d)(2).

and could not be supported by a substantial argument for the extension, modification or reversal of existing law."[5] N.Y. Civ. Rights Law § 70a(1)(a). There being no applicable Federal Rule, this state provision applies if it is substantive. It is. State laws governing a party's entitlement to attorneys' fees, like Section 70-a, are substantive for *Erie* purposes. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) ("We apply New York law to resolve ... entitlement to attorney's fees"); *RLS Associates, LLC v. United Bank of Kuwait PLC*, 464 F. Supp.2d 206, 213 (S.D.N.Y. 2006) ("under *Erie* principles, attorney's fees are considered substantive and are controlled by state law in diversity cases") (cleaned up); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (finding the federal application of Nevada's anti-SLAPP mandatory fee-shifting provision "unproblematic"). "Because there is no conflict with existing rules and the state statute governs an established substantive right, section 70-a applies in federal court." *Button v. New York Times Co.*, No. 24-CV-5888, 2025 WL 2643674, at *21 (S.D.N.Y. Sep. 15, 2025).

To be sure, Section 70-a "has both substantive and procedural features." *Grifols*, 2026 WL 836657, at *4. Beyond supplying a substantive right to fees, the statute also identifies two procedural mechanisms by which such entitlement may be demonstrated. *See* N.Y. Civ. Rights Law § 70-a(1)(a) ("costs and attorney's fees shall be recovered upon a demonstration, including an adjudication pursuant to [C.P.L.R. §§ 3211(g) and

---

[5] The Court's use of the term "SLAPP Fee Applicant" refers to the party against whom an action involving public petition and participation lacking a substantial basis in law and fact is brought and who thereafter seeks fees. In other words, a defendant in the underlying SLAPP suit who files a counterclaim for fees in that action is a SLAPP Fee Applicant, and so is a plaintiff who files a separate, follow on action for fees after previously defending a SLAPP action lacking a substantial basis in law and fact.

3212(h)]…”). Those provisions of New York’s Civil Practice Law and Rules called out in Section 70-a(1)(a) not only provide a vehicle for litigating the “substantial basis” standard but also provide for expedited dismissal once that showing is made. Those mechanisms are procedural and “appear to conflict with Rules 12 [governing motions to dismiss] and 56 [governing motions for summary judgment]” insofar as the “substantial basis” standard in those contexts act as a standard by which a case can be disposed of. *Heilbut*, 778 F. Supp.3d at 567; *see also National Academy*, 551 F. Supp.3d at 431-32 (the “substantial basis” standard, when considered in the context of the special dismissal mechanisms, “impose[] a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure”).

Critically, however, the substantive right to fees provided by Section 70-a is not bound to the two procedural mechanisms identified in the statute. The statute’s plain language makes this clear: the statute awards fees to a SLAPP Fee Applicant upon the operative demonstration, “***including*** an adjudication pursuant to” C.P.L.R. §§ 3211(g) and 3212(h). N.Y. Civ. Rights Law § 70-a(1)(a) (emphasis added). The verb “to include” is “a term of enlargement, and not of limitation.” *Empire Mutual Insurance Co. v. Applied Systems Development Corp.*, 121 A.D.2d 956, 960, 505 N.Y.S.2d 607 (1st Dep’t 1986).[6] The term “does not manifest an intent to exclude” items not listed. *Id.*; *Bank of America, N.A. v. Kessler*, 39 N.Y.3d 317, 325, 186 N.Y.S.3d 85 (2023) (the word include “may be

[6] “When interpreting a state statute, federal courts must follow the state’s rules of statutory interpretation.” *Wayfarer Studios LLC v. Lively*, 24-CV-10049, 2026 WL 1707052, at *13 (S.D.N.Y. June 12, 2026) (cleaned up) (quoting *East Fork Funding LLC v. U.S. Bank, National Association as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR6*, 118 F.4th 488, 503 (2d Cir. 2024) (Liman, J., concurring)).

used to show the meaning of the defined word by listing some of the things meant to be referred to, but not by such listing excluding others of the same kind"); *see also National Shooting Sports Foundation, Inc. v. James*, 144 F.4th 98, 111 (2d Cir. 2025) ("Where 'including' is used [in a statute] to introduce a list of examples, such examples are to be viewed as illustrative, not exhaustive") (cleaned up). Accordingly, Section 70-a provides a substantive right to fees upon a demonstration that the SLAPP suit lacks a substantial basis, and its references to C.P.L.R. §§ 3211(g) and 3212(h) serve only as illustrative, non-exhaustive, examples of how such a demonstration may be made. *See Grifols*, 2026 WL 836657, at *4 (reasoning that the C.P.L.R. "provides ***one of*** the procedural mechanisms available in SLAPP suits") (emphasis added).

Section 70-a therefore does not "condition an award of attorneys' fees solely upon prevailing under the procedural provisions" mentioned therein. *Bobulinski*, 758 F. Supp.3d at 184 (quoting *Cheng v. Neumann*, 106 F.4th 19, 24 n.2 (1st Cir. 2024)). Instead, it creates a stand-alone, substantive right to fees that may be pursued either in state court or in federal court.[7] Put differently, "the only element of New York's anti-SLAPP law that the Court is applying" here is that substantive right, untethered from any

[7] The Second Circuit's ruling in *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) does not conflict. *La Liberte* considered the federal applicability of California's anti-SLAPP law, which is distinguishable from New York's statute insofar as California's law explicitly ties fee recovery to a special motion to strike not available in federal court. *See* Cal. Civ. Proc. Code § 425.16(c)(1) ("a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs"). As one court has observed, early cases in the Southern District holding that New York's anti-SLAPP fee regime cannot apply in federal court "did not appreciate … [that] the New York anti-SLAPP law does not have a provision tying fee-shifting to a specific state procedural mechanism." *Grifols*, 2026 WL 836657, at *4 (cleaned up) (rejecting *Brady v. NYP Holdings, Inc.*, No. 21-CV-3482, 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022), which held that New York's anti-SLAPP law did not apply in federal court).

procedural mechanisms mentioned in the statute. *Id.* at 183; *see also Grifols*, 2026 WL 836657, at *3 ("The fact that procedural provisions of the New York anti-SLAPP statute might conflict with the Federal Rules of Civil Procedure does not deprive the party on the opposite end of a SLAPP lawsuit from the substantive rights that New York intended to provide"). For this reason, the Court sees no obstacle to applying Section 70-a's substantive fee-shifting provision in federal district court. *See Lively v. Wayfarer Studios LLC*, No. 24-CV-10049, 2026 WL 852733, at *4 (S.D.N.Y. Mar. 27, 2026) (collecting cases and joining the "emerging trend of cases favoring the application of the substantive standards of the New York anti-SLAPP statute in federal court").

## II. Section 70-a Does Not Allow SLAPP Fee Applicants To Pursue Fees By Post-Dismissal Rule 54(d) Motion, As Defendants Did Here

The Court has thus far held that Section 70-a of the New York Civil Rights Law provides a substantive right to fees that may be pursued in federal court under *Erie*. The question then becomes ***how*** that state substantive right to attorneys' fees may be pursued. The Court concludes that although Section 70-a does not confine asserting the right to SLAPP fees to the two procedural mechanisms referenced in the statute, it does not permit SLAPP Fee Applicants to assert their right to fees as Defendants did here: by a Rule 54(d) motion following the Court's order granting a motion to dismiss under Rule 12(b)(6) for failure to state a claim.

Plaintiff's primary opposition to Defendants' motion is that Section 70-a requires SLAPP Fee Applicants to assert their fee request in a separate action or to have done so in the instant action by counterclaim, not a Rule 54(d) motion. (Opp. at 2-4.) Courts in this District are not of one mind on this issue. Some courts have said that Section 70-a's "may maintain an action, claim, cross claim or counterclaim" language "precludes a

Section 70-a fees application brought by motion" and requires a defendant to file a separate follow-on action or counterclaim. *Rapaport v. Finkelman*, 24-CV-5942, 2026 WL 2583071, at *3 (S.D.N.Y. Sep. 1, 2026) (denying post-dismissal motion for fees pursuant to "plain language" of New York's anti-SLAPP law); *see also Lively*, 2026 WL 852733, at *5 (denying Rule 54 motion for fees because SLAPP defendant "must proceed by way of 'an action, claim, cross claim or counterclaim'"). Others have interpreted the "may maintain" language to contemplate "defendants' continuing to litigate in an original action filed against them," including by filing a motion for fees. *Bobulinski*, 758 F. Supp.3d at 188-89 (granting motion for Section 70-a fees made in conjunction with motion to dismiss); *see also Button*, 2025 WL 2643674, at *21 (allowing Defendants to seek anti-SLAPP fees by Rule 54 motion in principle but denying motion for failure to comply with Rule 54's requirements).

Whether Section 70-a requires a separate action or counterclaim is a matter of statutory interpretation under New York law. "It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature." *Patrolmen's Benevolent Association v. City of New York*, 41 N.Y.2d 205, 208, 391 N.Y.S.2d 544 (1976); N.Y. Stat. Law § 92 ("The primary consideration … in the construction of statutes is to ascertain and give effect to the intention of the Legislature"). This exercise begins with an analysis of "the statutory text, which is the clearest indicator of legislative intent." *Matter of New York County Lawyers' Association v. Bloomberg*, 19 N.Y.3d 712, 721, 955 N.Y.S.2d 835 (2012). "[C]ourts should construe unambiguous language to give effect to its plain meaning." *Nostrom v. A.W. Chesterton Co.*, 15 N.Y.3d 502, 507, 914 N.Y.S.2d 709 (2010); N.Y. Stat. Law § 94 ("the statutory language is generally construed according

to its natural and most obvious sense, without resorting to an artificial or forced construction"). A statute is "to be construed as a whole, and all parts … are to be read and construed together," with consideration of context and structure. N.Y. Stat. Law § 97; *see also Kessler*, 39 N.Y.3d at 325 ("The statute must be given a sensible and practical over-all construction, which harmonizes all its interlocking provisions" (cleaned up)); *Friedman v. Connecticut General Life Insurance Co.*, 9 N.Y.3d 105, 115, 846 N.Y.S.2d 64 (2007) ("It is a well-settled principle of statutory construction that a statute or ordinance must be construed as a whole and that its various sections must be considered together and with reference to each other" (citation omitted)).

In addition to looking at the text of the relevant provision, "inquiry should be made into the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history." *Nostrom*, 15 N.Y.3d at 554; *Riley v. County of Broome*, 95 N.Y.2d 455, 463, 719 N.Y.S.2d 623 (2000) ("the legislative history of an enactment may also be relevant and is not to be ignored, even if words [are] clear"). "The letter of a statute is not to be slavishly followed when it leads away from the true intent and purpose of the Legislature." *Matter of Pirro v. Angiolillo*, 89 N.Y.2d 351, 357, 653 N.Y.S.2d 237 (1996).

The Court's analysis thus begins with the relevant statutory text: "A defendant in an action involving public petition and participation, as defined in [N.Y. Civ. Rights Law § 76-a(1)], ***may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees***, from any person who commenced or continued such action." N.Y. Civ. Rights Law § 70-a(1) (emphasis added). The Court addresses this language in two parts, first considering "action, claim, cross claim or

counterclaim for damages, including costs and attorney's fees" and then considering the word "maintain." In the course of doing so, the Court also considers other text in Section 70-a as well as the larger statutory scheme. The Court then revisits the legislative history of Section 70-a.

### A. "Action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees"

Section 70-a(1) authorizes a SLAPP defendant seeking "damages, including costs and attorney's fees," to maintain an "action, claim, cross claim or counterclaim" for that purpose. While these terms can be understood with varying degrees of clarity, they all invoke procedures for asserting an affirmative cause of action in a pleading, not by motion.

The statute's reference to "action," "cross claim" and "counterclaim" is clear. An action is a "civil or criminal judicial proceeding" that "result[s] in a judgment or decree." *Action*, *Black's Law Dictionary* (11th ed. 2019); N.Y. C.P.L.R. § 103 ("All civil judicial proceedings shall be prosecuted in the form of an action"); *see also Johnson v. Everyrealm, Inc.*, 657 F. Supp.3d 535, 559 (2d Cir. 2023) ("'action' refers to an overall legal proceeding filed in a court"). A civil action is commenced by the filing of a complaint, a type of pleading.[8] *See* N.Y. C.P.L.R. § 304 ("An action is commenced by filing a summons and complaint"); Fed. R. Civ. P. 3 ("A civil action is commenced by filing a

[8] A pleading is "[a] formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses." *Pleading*, *Black's Law Dictionary* (11th ed. 2019). The pleadings available under both New York and federal procedural rules are the complaint, the answer, and the reply. *See* N.Y. C.P.L.R. § 3011 (identifying the "kinds of pleadings" as a complaint (inclusive of interpleader complaints and third-party complaints), answer (which may assert cross-claims and counterclaims), and reply); *see also* Fed. R. Civ. P. 7 (listing a complaint, a third-party complaint, an answer, and a reply to an answer as the "only … pleadings … allowed," and defining "motion" separately).

complaint with the court"). A cross claim is "any cause of action in favor of one or more defendants … against one or more defendants." N.Y. C.P.L.R. § 3019(b); *see also* Fed. R. Civ. P. 13(g) (defining crossclaim as "any claim by one party against a coparty"). It is asserted in a pleading, typically an answer. *See* N.Y. C.P.L.R. § 3011 ("An answer may include … a cross-claim against a defendant); Fed. R. Civ. P. 13(g) ("A pleading may state as a crossclaim..."). A counterclaim is "any cause of action in favor of one or more defendants … against one or more plaintiffs." N.Y. C.P.L.R. § 3019(a); *see also* Fed. R. Civ. P. 13(a) (counterclaim is a claim "the pleader has against an opposing party"). Counterclaims must also be asserted in a pleading. *See* N.Y. C.P.L.R. § 3011 ("An answer may include a counterclaim against a plaintiff"); Fed. R. Civ. P 13(a), (b), (e) (identifying a pleading as the proper vehicle for asserting a counterclaim). Thus, actions, cross claims, and counterclaims are all asserted by pleading rather than by motion.

The term "claim" is more amorphous. A claim is "a demand for money, property, or a legal remedy to which one asserts a right." *Claim*, *Black's Law Dictionary* (11th ed. 2019). Whereas an action refers broadly to a lawsuit as a whole, the "[i]ndividual demands for relief within a lawsuit … are claims." *Brownback v. King*, 592 U.S. 209, 220-21 (2021) (Sotomayor, J., concurring); *see also Legion Insurance Co. v. Singh*, 272 A.D.2d 809, 811-12, 708 N.Y.S.2d 183 (3d Dep't 2000) (acknowledging that claim "could mean either the entire underlying action or merely a discrete cause of action therein"); *Cook v. Deloitte & Touche USA, LLP*, 13 Misc.3d 1203(A) at *6, 824 N.Y.S.2d 753 (Sup. Ct. N.Y. Cnty. 2006) (discussing distinction between action and claim and describing "claims" as that "upon which plaintiff's instant action are based"); *Johnson*, 657 F. Supp.3d at 559 ("'claim' … refers to a specific assertable or asserted right within" an

action). This definition certainly encompasses the various causes of action that are asserted in each count of a complaint. *See Claim*, *Black's Law Dictionary* (11th ed. 2019) (defining claim as "esp. the part of a complaint in a civil action specifying what relief the plaintiff asks for").

One might argue that this definition of "claim" is broad enough to also encompass certain types of motions. Motions for attorneys' fees, for instance, are in some respects "demands for relief within a lawsuit." *Brownback*, 592 U.S. at 220-21 (Sotomayor, J., concurring). Indeed, Rule 54 outlines how "[a] ***claim*** for attorney's fees … must be made." Fed. R. Civ. P. 54(d)(2)(A) (emphasis added). And "claim" as used in the federal Rule 68 context has similarly been held to encompass motions. *See Steiner v. Lewmar, Inc.*, 816 F.3d 26, 33 (2d Cir. 2016) ("When attorneys' fees are sought by motion, the act of seeking them is fairly embraced in the word 'claim'").

With respect to Section 70-a, however, this broad interpretation should be rejected once "the statutory context of the provision" is considered. *Avella v. City of New York*, 131 A.D.3d 77, 84, 13 N.Y.S.3d 358 (1st Dep't 2015). Section 70-a(1) offers SLAPP Fee Applicants four vehicles by which they may obtain damages, including fees: by action, claim, cross claim, or counterclaim. At least three of those – action, cross claim, and counterclaim – contemplate the assertion of a cause of action by pleading (i.e., an action is commenced by a complaint or petition; cross claims and counterclaims are asserted by defendants in pleadings after an action has begun). It is unlikely that the Legislature intended "claim" to be an outlier assertable by motion.

The canon of construction known as *noscitur a sociis* directs that the Court "interpret the meaning of an ambiguous word in relation to the meanings of adjacent

words." *Kese Industries v. Rosyln Torah Foundation*, 15 N.Y.3d 485, 491-92, 914 N.Y.S.2d 704 (2010) (adopting interpretation of statutory term that "fits logically" with characteristics of items around it, rather than interpretation that would result in it "shar[ing] little in common" with the words around it); *State v. Mobil Oil Corp.*, 38 N.Y.2d 460, 464, 381 N.Y.S.2d 426 (1976) (employing *noscitur a sociis* canon to interpret statutory language such that it "takes on a connotation similar to that of the other terms with which it is found in company"); *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 604-05 (2d Cir. 2021) (when statutory language is "undefined and potentially ambiguous" courts should interpret it so that "its scope aligns with" the words around it); *United States v. Heicklen*, 858 F. Supp.2d 256, 264-65 (S.D.N.Y. 2012) (courts must "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of [the Legislature]") (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). For the term "claim" to be consistent with the scope of the other examples listed in Section 70-a(1), it must refer to its more specific definition: an affirmative cause of action or prayer for relief asserted as a count of a complaint or other pleading. *C.f. Ferber v. Schultz*, 104 Misc.2d 1009, 1010, 429 N.Y.S.2d 861 (Civ. Ct. Kings Cnty. 1980) ("Claim and cause of action have substantially the same meaning").

Any doubt is also laid to rest by the statute's explanation that a "claim" can be made for "damages, including costs and attorney's fees." N.Y. Civ. Rights Law § 70-a(1). The plain language of the statute creates a cause of action for damages for which attorneys' fees are one type, along with "other compensatory damages" and "punitive damages." Quite simply, a litigant does not bring a motion for damages; rather, damages are an aspect of a cause of action that must be asserted in a pleading. *See Word v.*

*Croce*, No. 00-CV-6496, 2001 WL 755394, at *5 (S.D.N.Y. July 5, 2001) (denying motion for reconsideration raising new causes of action and noting that "plaintiff may bring a separate action alleging First Amendment claims, but she cannot do so through motion practice"); *c.f. Laguerre v. Maurice*, 192 A.D.3d 44, 50, 53, 138 N.Y.S.3d 123 (2d Dep't 2020) (holding that special damages, which "contemplate the loss of something having economic or pecuniary value," must be alleged in the complaint).

Reference to the broader statutory scheme further confirms this reading. Section 70-a governs the rights of defendants in "action[s] involving public petition and participation, as defined in [N.Y. Civ. Rights Law § 76-a]." Section 76-a, the main function of which is to impose a heightened standard of fault on plaintiffs, defines an "action involving public petition and participation" as "a claim based upon" certain types of communications or other lawful conduct in furtherance of the exercise of free speech. It then defines "claim" to "include[] any lawsuit, cause of action, cross-claim, counterclaim, or other judicial pleading ***or filing requesting relief***." N.Y. Civ. Rights Law § 76-a(1)(b) (emphasis added). A motion can be reasonably understood as a "filing requesting relief" subsumed in this definition of claim. But any argument that Section 76-a's definition of "claim" should apply throughout the rest of the anti-SLAPP scheme is undermined by Section 76-a's caveat that the definitions therein are "[f]or purposes of ***this*** section."[9] *Id.* § 76-a(1) (emphasis added). No such definition appears in Section 70-a.

[9] One seeking to impute the definition of "claim" found in Section 76-a into Section 70-a's use of the word might invoke the canon of consistent usage, which instructs that "where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout, and the same meaning will be attached to similar expressions in the same or a related statute." N.Y. Stat. Law § 236. However, that canon only applies "absent any indication of a contrary intent." *Mental Hygiene Legal Service v. Sullivan*, 32 N.Y.3d 652, 659-60, 95 N.Y.S.3d 544 (2019); *Rosenblum v. New York State*

In drafting the anti-SLAPP statutory scheme, the New York Legislature knew how to define "claim" broadly to encompass motions and, further, how to incorporate by reference definitions provided in other sections. It could have done either with respect to Section 70-a's use of "claim"; its decision not to is meaningful. *See Commonwealth of Northern Mariana Islands v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55, 63, 967 N.Y.S.2d 876 (2013) ("the failure of the legislature to include a term in a statute is a significant indication that its exclusion was intended"); *Theroux v. Reilly*, 1 N.Y.3d 232, 240, 771 N.Y.S.2d 43 (2003) (if the Legislature wanted a statute to accomplish something, "it easily could have and surely would have written the statute to say so"); *Makhani v. Kiesel*, 211 A.D.3d 132, 143, 178 N.Y.S.3d 506 (1st Dep't 2022) ("we cannot expand the statute to cover something that the legislature could have easily expressed had it intended to do so"); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where [the Legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the Legislature] acts intentionally and purposefully in the disparate inclusion or exclusion"); *Ziparo v. CSX Transportation, Inc.*, 15 F.4th 153, 161 (2d Cir. 2021) (courts should "give … effect to the conspicuous omission of … language" that is provided in other sections).

---

*Workers' Compensation Board*, 309 A.D.2d 120, 125, 764 N.Y.S.2d 82 (1st Dep't 2003) (canon applies "if the acts are similar in intent and character"). Here, the Legislature's express designation that Section 76-a's broadly defined "claim" applies "for this section" is a strong indication of contrary intent. Moreover, there are important differences between Sections 70-a and 76-a. Section 76-a defines "claim" for the purpose of identifying what types of suits are SLAPP suits that make defendants eligible for fees. Section 70-a's use of "claim" is different: it uses claim to describe how defendants can pursue those fees. These sections thus have disparate purposes, and it would be reasonable for the Legislature to intend "claim" to have a broad definition when describing the situations in which fees are available and a more limited definition when describing how defendants should pursue those fees.

For these reasons, the Court concludes that Section 70-a's reference to "claim," like the references to action, cross claim, and counterclaim surrounding it, contemplates the assertion of a cause of action by pleading, such as in a complaint or answer.[10] "Claim" therefore cannot supply the statutory hook for Defendants' argument that they can seek anti-SLAPP fees by a post-dismissal Rule 54(d) motion.

**B. "Maintain"**

Defendants argue that Section 70-a(1)'s "may maintain an action" language allows them to seek fees by motion. (Reply at 2.) They rely on *Bobulinski*, in which the defendant requested Section 70-a fees in conjunction with its motion for 12(b)(6) dismissal, a request which the court granted, holding that a SLAPP defendant maintains an action by continuing to litigate it. *See* 758 F. Supp.3d at 188-89. At least one other case in the Southern District has acknowledged this interpretation. *See Button*, 2025 WL 2643674, at *21 (citing *Bobulinski* for proposition that "Defendants need not bring a separate action

[10] The Court acknowledges the procedural incongruence this requirement seemingly poses for SLAPP Fee Applicants who may prefer to move for dismissal rather than file a responsive pleading containing cross claims or counterclaims. State and federal procedural rules typically require that a motion to dismiss be filed before a responsive pleading. *See* N.Y. C.P.L.R. § 3211(f) (filing a motion to dismiss extends the deadline to file a responsive pleading); Fed. R. Civ. P. 12(b) (requiring that a Rule 12(b) motion to dismiss "must be made before pleading if a responsive pleading is allowed"). But "nothing in [those] rule[s] prohibits the filing of a motion to dismiss with an answer" (with counterclaim) or the filing of an answer with counterclaim "after a motion to dismiss has been filed but before it has been decided." *Lifeguard Licensing Corp. v. Kozak*, No. 15-CV-8459, 2016 WL 3144049, at *4 (S.D.N.Y. May 23, 2016); *see also Krusen v. Moss*, 174 A.D.3d 1180, 1180, 105 N.Y.S.3d 607 (3d Dep't 2019) (acknowledging that defendant filed an answer while defendant's C.P.L.R. § 3211 motion to dismiss was pending). Thus, there is no reason why a SLAPP defendant seeking dismissal of the SLAPP action against it cannot also file a counterclaim for fees before the dismissal is obtained. And even a SLAPP defendant opting to file only a pre-answer motion to dismiss has options: "If a case gets past the motion-to-dismiss stage, a defendant may assert a counterclaim. And if it doesn't, they can file a follow-on case seeking fees." *Wang v. Sussman*, No. 24-CV-3987, 2025 WL 2607155, at *6 (S.D.N.Y. Sep. 9, 2025).

or counterclaim to demand attorneys' fees"). But the majority of cases in the District to face this issue have found that the statute's plain language requires the filing of a new action or pleading. *See, e.g.*, *Lindell v. Mail Media Inc.*, 575 F. Supp.3d 479, 489 (S.D.N.Y. 2021); *Chinese Americans Civil Rights Coalition, Inc. v. Trump*, No. 21-CV-4548, 2022 WL 1443387, at *6 (S.D.N.Y. May 6, 2022); *Lively*, 2026 WL 852733, at *5.

This Court narrows the issue. As discussed above, reading Section 70-a(1) without the word "maintain" indicates that a pleading is necessary for recovery of anti-SLAPP fees under Section 70-a. Use of the word "maintain" introduces an ambiguity that is not easily resolved. The Court need not resolve the exact parameters of that ambiguity, however, because whatever "maintain" was intended to mean, it does not sanction the procedure followed by Defendants here.

The meaning of "maintain," without reference to its context or the broader statutory scheme, is susceptible to multiple meanings and therefore ambiguous. The Supreme Court has acknowledged as much in the very case *Bobulinski* relies on for its holding that "maintain" holds the same meaning as the term "continue." *See Bobulinski*, 758 F. Supp.3d at 188 n.22 (citing *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 695 (2003)). In *Breuer*, the Court interpreted language in the Fair Labor Standards Act stating that an action for penalties "may be maintained." According to the Court, maintain "may mean 'to continue' to litigate" but is also "often read as "'bring' or 'file.'" *Breuer*, 538 U.S. at 695. The Court opined that "the word maintain enjoys a breadth of meaning that leaves [it] ... ambiguous at best" and thus could not be read as "expressly provid[ing]" what the plaintiff-petitioner in that case was requesting. *Id.* at 694-95. Maintain, as used in Section 70-a, is likewise an "ambiguous term." *Id.* at 695.

Dictionary definitions of "maintain" do not clarify the ambiguity the Supreme Court identified in *Breuer*. Black's Law Dictionary provides six definitions for "maintain" – the first two being "to continue" and the third "to assert":

1. To continue (something).
2. To continue in possession of (property, etc.).
3. To assert (a position or opinion); to uphold (a position or opinion) in argument.
4. To care for (property) for purposes of operational productivity or appearance; to engage in general repair and upkeep.
5. To support (someone) financially; esp., to pay alimony to.
6. (Of a third party to a lawsuit) to assist a litigant in prosecuting or defending a lawsuit; to meddle in someone else's litigation.

*Maintain*, *Black's Law Dictionary* (11th ed. 2019). Merriam Webster defines "maintain" variously as: "to keep in an existing state"; "to sustain against opposition or danger"; "to ***continue*** or persevere in"; "to support or provide for"; "sustain"; and "to affirm in or as if in argument: ***assert***." *Maintain*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/maintain (last visited November 23, 2026) (emphasis added). Thus, while dictionaries are often regarded as offering "useful guideposts in determining the meaning of a word or phrase," *Walsh v. New York State Comptroller*, 34 N.Y.3d 520, 524, 122 N.Y.S.3d 209 (2019), they do not in this instance indicate whether the plain meaning of "maintain" is closer to "continue," as Defendants urge, or closer to "assert," "bring," or "file," as Plaintiff argues.

To attempt to resolve that ambiguity, the Court turns to the surrounding text and statutory structure to understand what "maintain" means as deployed in Section 70-a(1). *See New York State Psychiatric Association, Inc. v. New York State Department of Health*, 19 N.Y.3d 17, 24, 945 N.Y.S.2d 191 (2012) (statutory interpretation "requires

examination of the statutory context of the provision"). Section 70-a(1) allows SLAPP Fee Applicants to "***maintain*** an action, claim, cross claim or counterclaim to recover damages, including attorney's fees from any person who ***commenced*** or ***continued*** such action." N.Y. Civ. Rights Law § 70-a(1) (emphasis added). The Court makes two observations about this clause, both of which militate against adopting Defendants' reading that "maintain" means "continue."

First, the meaningful variation canon directs that "maintain" must mean something different than "commence" and "continue." *See* N.Y. Stat. Law § 98 ("meaning must, if possible, be given to the entire statute and every part and word thereof"); *Commonwealth of Northern Mariana Islands*, 21 N.Y.3d at 63 ("when different terms are used in various parts of a statute or rule, it is reasonable to assume that a distinction between them is intended" that "cannot be simply disregarded"); *Diaz-Roa v. Hermes Law, P.C.*, 193 F.4th 219, 226 (2d Cir. 2026) (discussing "well-settled" canon that "the use of different words within the same statutory context strongly suggests that different meanings were intended"); *Lopez Benitez v. Francis*, 795 F. Supp.3d 475, 488-89 (S.D.N.Y. 2025) (rejecting interpretation of statute that "violates the principle that [the Legislature] is presumed to have acted intentionally in choosing different words in a statute, such that different words and phrases should be accorded different meanings"). The Court cannot "simply disregard[]" the Legislature's use of distinct terms "maintain" and "continue" in the same sentence and presume them to mean the same thing. *Commonwealth*, 21 N.Y.3d at 63.

Second, "maintain" should be construed as having a consistent meaning when applied to each noun in the parallel list it precedes. *C.f. Consolidated Restaurant*

*Operations, Inc. v. Westport Insurance Corp.*, 41 N.Y.3d 415, 428, 211 N.Y.S.3d 800 (2024) (reasoning that prepositive modifier gives meaning to each word it modifies); *In re Soussis*, 136 F.4th 415, 432 n.21 (2d Cir. 2025) ("a modifier at the beginning … of a series of terms modifies all the terms"). An interpretation that equates "maintain" with "continue" leads to difficulties when applied consistently to what follows. "Maintain" could reasonably mean "continue" when used in conjunction with action and claim, because if a defendant is seeking fees for defending a SLAPP action (and, therefore, whatever claims were asserted therein), *a fortiori*, an action and at least one claim already exist that are capable of being continued. But this interpretation of "maintain" makes less sense when it comes to cross claims and counterclaims; it is not a given that, by the time a SLAPP Fee Applicant is demanding fees, a cross claim or counterclaim even exists capable of being continued. Even more troubling, if "maintain" only means "continue," there would be no right of action to initiate a claim for fees at all (let alone by cross claim or counterclaim), making those terms superfluous. Thus, "maintain" as a synonym for "continue" makes little sense with respect to two of the nouns it precedes.

"Maintain" as a synonym for "commence" fails for the same reasons. The meaningful variation canon militates against this reading, as "maintain" and "commence" are presumed to have different meanings. Further, "commence" does not make sense when used to introduce much of what it precedes. Commence envisions the beginning or start of something. *See Commence*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/commence (last visited November 23, 2026) (defining "commence" as "to enter upon: begin" and "to have or make a beginning: start"). An action can be commenced, insofar as the filing of a complaint starts an action. But claims,

cross claims, and counterclaims are not commonly said to commence; rather, they are asserted in an already-commenced action.

So, if "maintain" does not mean merely "continue" or merely "commence," how can the word be understood in a way that makes consistent sense when used in connection with each of "action, claim, cross claim or counterclaim," as those terms are defined above? It could be argued that "maintain" encompasses ***both*** continue and commence, but that contention is not sound for two reasons. First, as explained, ***neither*** commence nor continue make sense with two of the four paths identified in the statute: cross claims or counterclaims. Even attributing an expansive reading to "maintain" does not resolve the issue that the verb must mean something with respect to each of the nouns it controls. In other words, "maintain" does not mean both continue and commence for the same reason it does not mean either individually. Further, if the Legislature intended to provide not one but two general paths for SLAPP Fee Applicants to recover fees – by asserting a cause of action in a pleading and by continuing an action through motion practice – it offered no indication that its use of the single word "maintain" was to have such a multifaceted meaning.

Second, the Legislature's use of the term "maintain an action" in other statutes does not embrace a dual meaning that includes both commence and continue. Instead, the phrase has been used to codify a cause of action pursuable by pleading. For example, Section 5-4.1 of the New York Estates Powers and Trusts Law says that a personal representative of a decedent "may maintain an action to recover damages" for wrongful death and thus codifies a cause of action for wrongful death pursuable by pleading, not motion. *See Proano v. Gutman*, 211 A.D.3d 978, 983, 180 N.Y.S.3d 279

(2d Dep't 2022) (describing EPTL § 5-4.1 as creating "a cause of action" for which a complaint must be filed within the applicable statute of limitations). The Legislature used the same language to codify a cause of action for quiet title proceedings, *see* N.Y. Real Prop. Acts. Law § 1501; the Attorney General's prosecution of the unauthorized practice of law, *see* N.Y. Jud. Law § 476-a; and the recovery of certain penalties and forfeitures, *see* N.Y. C.P.L.R. § 7203. Where the Legislature has elsewhere used the language "may maintain an action," it has done so to allow a cause of action pursuable by pleading, not by motion practice. There is no indication that, in the context of Section 70-a, the Legislature suddenly meant "maintain an action" to have variable meanings, especially when one of those meanings would be a departure from how the Legislature has consistently used the term elsewhere. *See Prometheus Realty Corp. v. City of New York*, 80 A.D.3d 206, 210, 911 N.Y.S.2d 299 (1st Dep't 2010) (referring to other statutes to decipher meaning of statute before the court).

Where does that leave us in the task of interpreting Section 70-a? In isolation, and in context of the statute, the term "maintain" remains ambiguous. *Breuer*, 538 U.S. at 695. But it is clear to the Court that whatever "maintain" means, it does not simply mean "continue" and does not permit what Defendants seek to do here – file a post-dismissal Rule 54(d) motion for fees. Section 70-a sets forth a ***cause of action*** for ***damages*** and expressly designates fees as a type of damage. To assert a claim, cross claim, or counterclaim for damages, a litigant brings an action and files a pleading, not a motion for fees after a motion to dismiss. As much as maintain is ambiguous, it does not provide the hook for the manifestly different procedure Defendants ask the Court to bless.

To be sure, as noted above, New York provides, and Section 70-a incorporates, two special motions by which SLAPP defendants can obtain dismissal by demonstrating that the claims against them lack a substantial basis. N.Y. C.P.L.R. §§ 3211(g) and 3212(h). New York courts have awarded fees in conjunction with successful motions made under those specific provisions. *See Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 32, 169 N.Y.S.3d 272 (1st Dep't 2022) (awarding fees in conjunction with successful 3211(g) motion to dismiss); *215 W. 84th Street Owner LLC v. Bailey*, 217 A.D.3d 488, 489, 191 N.Y.S.3d 368 (1st Dep't 2023) (same); *Goldman v. Abraham Heschel School*, 227 A.D.3d 544, 545, 211 N.Y.S.3d 333 (1st Dep't 2024) (same). Notably, these state cases do not explicitly address arguments regarding the meaning of Section 70-a's "may maintain an action, claim, cross claim or counterclaim" language and whether it authorizes obtaining fees by motion. And lower state court cases decided after the above-referenced Appellate Division cases have acknowledged the continuing uncertainty. *See, e.g.*, *Benlevi v. Rukaj*, 84 Misc.3d 806, 811 n.3, 223 N.Y.S.3d 797 (Sup. Ct. N.Y. Cnty. 2024) ("Because defendant raised all three demands for relief as separate counterclaims in addition to his motion to dismiss, the court need not decide whether anti-SLAPP remedies may be sought by motion or require a separate counterclaim").

It may be that Section 70-a(1)(a)'s "'including' clause clarified that the statute didn't just apply to actions and claims but also 'included' dismissals." *Wang*, 2025 WL 2607155, at *5. Indeed, *Bobulinski's* award of Section 70-a fees accompanied its grant of defendant's motion to dismiss, and its interpretation of maintain should be understood in that context. 758 F.Supp.3d at 190. But that is not the case before the Court, as the instant motion for fees was made post-dismissal, and Defendants did not raise the

prospect of fees in their Rule 12(b)(6) briefing. (*See* Dkts. 26, 31.) So, even if Section 70-a contemplates fees being available in conjunction with dismissal (and, for the avoidance of doubt, the Court is not so holding and notes that Judge Subramanian ruled otherwise in *Wang*), it does not encompass the scenario presented here: a separate, post-dismissal Rule 54(d) motion for fees after dismissal already has been granted. *C.f. Lively*, 2026 WL 852733, at *5 (denying Rule 54 motion for fees as procedurally improper).

This conclusion comports with the principle that "[a] statute which infringes on common right is strictly construed." N.Y. Stat. Law § 311. New York courts have repeatedly held that the anti-SLAPP law is in derogation of the common law inasmuch as it restricts access to courts and burdens the right to petition. *See Harfenes v. Sea Gate Association*, 167 Misc.2d 647, 652-53, 647 N.Y.S.2d 329 (Sup. Ct. N.Y. Cnty. 1995) (the anti-SLAPP law "places new restrictions on the ability of public applicants to seek redress from the courts …. As such, [Section 70-a] is in derogation of the common law"); *Hariri v. Amper*, 51 A.D.3d 146, 151, 854 N.Y.S.2d 126 (1st Dep't 2008) ("we find that the anti-SLAPP law is in derogation of the common law and must be strictly construed"); *Guerrero v. Carva*, 10 A.D.3d 105, 115, 779 N.Y.S.2d 12 (1st Dep't 2004) (same); *315 West Enterprises LLC v. Robbins*, 171 A.D.3d 466, 467, 95 N.Y.S.3d 800 (1st Dep't 2019) (same). Accordingly, the law should be narrowly construed, which in this instance supports the conclusion that the term "maintain" should not be expansively interpreted to include post-dismissal motions. *See Wang*, 2025 WL 2607155, at *4-6 (citing mandate to narrowly construe anti-SLAPP law as support for its holding that law "does not contemplate an award of attorney's fees on a Rule 12(b)(6) dismissal").

**C. Legislative History**

To the extent any ambiguity remains, the Court turns to the anti-SLAPP law's legislative history to see if it sheds any light on the Legislature's intent with respect to how SLAPP Fee Applicants were intended to pursue fees. *See Roberts v. Tishman Speyer Properties, L.P.*, 13 N.Y.3d 270, 286, 890 N.Y.S.2d 388 (2009) (examining statute's legislative history to discern legislative intent where text was ambiguous). Review of the legislative bill jacket relating to the 2020 amendment of the statute reveals two clear legislative intentions.

First, the Legislature intended the amendments to "broadly widen the ambit" of speech that the law protects. N.Y. Bill Jacket, 2020 A.B. 5991, Ch. 250. The Legislature acknowledged that the original version's protections for defendants "ha[d] been strictly limited to cases initiated by persons or business entities that are embroiled in controversies over a public application or permit," and that the amendments were meant to broaden the scope of defendants protected by the law. *Id.* ("This legislation clarifies and extends the intent of the law by broadly widening the scope to include matters of 'public interest'"). Further, the bill jacket states that the statutory provision defining "matters of 'public interest'" should be "broadly construed." *Id.*

Second, the Legislature was troubled by the judiciary's exercise of discretion to decline awarding fees in SLAPP actions. To address that concern, the Legislature made fee awards mandatory upon the requisite showing that a SLAPP action lacked a substantial basis in fact and law. *See id*. ("The courts have failed to use their discretionary power to award costs and attorney's fees" and therefore "the bill requires – rather than merely allows – an award of attorney's fees if the Court finds that the lawsuit was brought to silence free speech").

The legislative history is far less informative regarding what procedure the Legislature intended SLAPP Fee Applicants to follow in seeking fees. One might argue that the Legislature's express intent to make fee awards mandatory and to expand the scope of SLAPP defendants who may invoke the statute suggests an overall intent to make recovery of fees more easily obtainable, which in turn suggests an intent to allow fees to be pursued by motion in the underlying SLAPP action. But that speculative logic is tenuous. Whether fees should be awarded automatically or by discretion once the requisite showing that the underlying action lacked a substantial basis has been made is fundamentally different than by what means that requisite showing must be made.

Absent a clear indication in the legislative history of how the Legislature intended SLAPP Fee Applicants to pursue fees, the Court is left to rely on the statute's text – "the clearest indicator of legislative intent." *Ezrasons, Inc. v. Rudd*, 44 N.Y.3d 532, 543, 249 N.Y.S.3d 826 (2025) (citation omitted). If the statute requires amendment to allow parties seeking SLAPP fees to do so by the procedure followed by Defendants here, then the Legislature must do so; this Court may not. *See Bright Homes, Inc. v. Wright*, 8 N.Y.2d 157, 162, 203 N.Y.S.2d 67 (1960) ("Courts are not supposed to legislate under the guise of interpretation, and in the long run it is better to adhere closely to this principle and leave it to the Legislature to correct evils if any exist"); *Hernandez v. Robles*, 26 A.D.3d 98, 102, 805 N.Y.S.2d 354 (1st Dep't 2005) ("courts should not correct supposed omissions or defects in legislation" (cleaned up)) (citing N.Y. Stat. Law § 73 ("The courts in construing statutes should avoid judicial legislation")) *aff'd*, 7 N.Y.3d 338, 821 N.Y.S.2d 770 (2006).

At least one legislative proposal has been recently introduced that would amend Section 70-a's language with respect to the proper vehicle for seeking fees. *See* N.Y.

Assemb. 6626, 248th Sess. (N.Y. 2025) (proposing various amendments, including the addition of language saying that "a prevailing defendant in an action involving public participation shall obtain costs and attorney's fees, via motion or other request"). The bill's summary states that, among other things, it "adds a new subdivision … to provide for the recovery of costs and attorney's fees on motion," and the bill's stated purpose is to make "necessary changes to clarify anti-SLAPP procedures." *Id.* While "[a]n amendment to a statute may be used to divine the legislative intent with regard to the original law," *Itri Brick & Concrete Corp. v. Aetna Casualty & Surety Co.*, 89 N.Y.2d 786, 796, 658 N.Y.S.2d 903 (1997), this proposal is still in Committee and ultimately may never be adopted, leaving it minimally instructive as to the meaning of the statute before the Court. *See American Airlines, Inc. v. State Commission for Human Rights*, 29 A.D.2d 178, 181, 286 N.Y.S.2d 493 (1st Dep't 1968) ("In addition, the rejection by the Legislature of the amendments [to the statute in question] … is a significant circumstance against" interpreting the original statute in accordance with those amendments); *c.f. United States v. Coonan*, 143 F.4th 119, 127 (2d Cir. 2025) ("subsequent legislative history is a hazardous basis for inferring the intent of an earlier [Legislature], especially where … the proposals do not become law" (cleaned up)). It is mentioned here only to illustrate the point that the Legislature can make its intentions clear by amendment if it desires to do so.

## III. Federal Rule Of Civil Procedure 54(d) Does Not Displace Section 70-a's Procedural Requirements

Having determined what Section 70-a says (or, perhaps more accurately, does not say) about the proper vehicle for requesting anti-SLAPP fees, the Court now turns to what the Federal Rules say and whether an on-point Federal Rule displaces Section 70-a's

procedural requirements. In *Berk v. Choy*,[11] the Supreme Court held that on-point federal procedural rules may displace "contrary state law ***even if*** the state law would qualify as substantive under *Erie*'s test." 607 U.S. 187, 192 (2026) (emphasis added). If a federal procedural rule "'answers the question in dispute[,]' … it governs, unless it 'exceeds statutory authorization or Congress's rulemaking power.'" *Id.* (quoting *Shady Grove*, 559 U.S. at 398).

At least one case in this District has held that Federal Rule of Civil Procedure 54(d) answers the question of how attorneys' fees may be pursued, thus displacing Section 70-a's procedure.[12] *See Button*, 2025 WL 2643674, at *21 (citing *Bobulinski* as possible basis for interpreting Section 70-a to allow fees by motion but holding that "this Court must apply the federal procedural Rule 54(d) to determine the question of how parties may move for attorneys' fees" pursuant to Section 70-a). Another case in the District of Delaware, applying New York law, acknowledged this displacement as a possibility without holding conclusively one way or the other. *See Richey v. Showtime Networks Inc.*, 24-CV-134, 2026 WL 867264, at *5 (D. Del. Mar. 30, 2026) (motion for Section 70-a fees "tees up" questions of "when and how [defendant] must request costs and fees"

---

[11] Plaintiff cites *Berk* in opposition, but his reasoning is somewhat mystifying. Plaintiff acknowledges *Berk*'s holding that valid Federal Rules can displace even state substantive law, but instead of explaining how or why that principle is relevant to Plaintiff's opposition, Plaintiff states that *Berk* did not broadly exempt state "preconditions to proceeding" from displacement. (Opp. at 4-5.) In Reply, Defendants argue that "*Berk* does not affect this case," and even if it did, "it would only require that Defendants follow the federal procedural framework for obtaining attorneys' fees… which is precisely what Defendants have done." (Reply at 7-8.) That argument also misses the mark, as it does not address Rule 54's "unless" language.

[12] For simplicity, the Court uses the term "action or claim requirement" to apply broadly to include claims, cross claims, and counterclaims.

and "Rule 54(d) concerns both of those questions"). Notwithstanding *Button*, the Court finds that Rule 54 does not control here, and Defendants' Rule 54(d) motion for fees thus should be denied as procedurally improper.

Rule 54(d) states that "[a] claim for attorney's fees … must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). The Rule thus answers the question of how attorneys' fees must be requested; i.e., by motion in accordance with the Rule's instructions regarding the motion's timing and content. Consequently, under *Berk* and *Shady Grove*, Rule 54 displaces Section 70-a's action or claim requirement unless Section 70-a's fee provision falls within Rule 54's exception for fees to be proved at trial as an element of damages. *See CIT Bank, N.A. v. Zisman*, 17-CV-2126, 2021 WL 3354047 (E.D.N.Y. Mar. 1, 2021) (holding that Rule 54(d) motion requirement displaces provision of New York's Real Property Law requiring that fees be pursued by counterclaim).

In deciding whether fees are required "to be proved at trial as an element of damages" under substantive law, courts distinguish fees that are "collateral to and separate from a decision on the merits," from those that are themselves "the measure of compensatory damages" in the underlying suit. *Scottsdale Insurance Co. v. McGrath*, 19-CV-7477, 2024 WL 4512210, at *11 (S.D.N.Y. Oct. 17, 2024). The former may be brought by motion, while the latter fall into Rule 54's carve out for fees subsumed as part of damages and "typically are to be claimed in a pleading." Fed. R. Civ. P. 54(d)(2) (advisory committee's note to 1993 amendment.) For example, where a statute or contract permits an award of fees to a prevailing party, fees can be requested by Rule

54(d) motion because such award is "independent of the remedy for the alleged" misconduct at the heart of the case. *Terra Energy & Resources Technologies, Inc. v. Terralinna Party Ltd.*, 12-CV-1337, 2014 WL 5690416, at *4 (S.D.N.Y. Nov. 5, 2014) (granting motion for reconsideration and noting that earlier ruling that contractual prevailing party fee shifting provision could not be brought by Rule 54 motion was clearly erroneous); *accord Jane Street Group, LLC v. Millenium Management LLC*, 24-CV-2783, 2024 WL 3460987, at *3 (S.D.N.Y. July 18, 2024) (dismissing counterclaim for attorneys' fees pursuant to contractual prevailing party fee-shifting provision because such request should be made "in a postjudgment motion (because only then can the prevailing party be determined)").

Conversely, when fees are part of the injury alleged in the underlying suit, such as when "sought under the terms of an attorney-fee contract," Rule 54(d)'s "unless" clause is implicated and fees may not be pursued by motion. Wright & Miler § 2680; *accord Idrovo v. Mission Design and Management, Inc.*, 10-CV-4188, 2012 WL 6755273, at *2 (E.D.N.Y. Nov. 28, 2012) ("Rule 54(d)(2) would not apply here, where the grounds for a fee recovery stem from an alleged breach of a retainer agreement, as those fees would have to be proven at trial as an element of damages").

On a conceptual level, Section 70-a's fee provision has characteristics of both categories. On one hand, in predicating a fee award on a showing that the SLAPP action was "without a substantial basis in fact and law," Section 70-a awards fees to the prevailing party in a SLAPP suit and is akin to a prevailing party fee-shifting provision that can be pursued by motion. *See Reeves*, 232 A.D.3d at 19 (describing Section 70-a as providing for a "mandatory award of attorneys' fees to the prevailing defendant"); *Margolis*

*v. Rudolph*, No. 21-CV-2447, 2023 WL 6151514, at *11 (E.D.N.Y. Sep. 20, 2023) ("New York Civil Rights Law § 70-a provides that prevailing defendants in a SLAPP suit shall recover attorney's fees and costs"). On the other hand, insofar as SLAPP actions are intended to make the exercise of free speech costly for defendants, legal fees make up the core injury alleged in a defendant's affirmative anti-SLAPP claim and therefore are an element of damages to be pursued by pleading, not motion. *See Sweigert*, 2021 WL 1578097, at *1 (SLAPP suits are filed "to burden opponents with legal defense costs"); 2020 N.Y. Sess. Laws ch. 250 (McKinney) (referring to fees as "the principal remedy currently provided to victims of SLAPP suits).

Reference to Section 70-a's text convinces the Court that the latter interpretation is the correct one, as the statute plainly identifies fees as a component of damages. The statute is titled "[a]ctions involving public petition and participation; ***recovery of damages***." N.Y. Civ. Rights Law § 70-a (emphasis added). The statute establishes a cause of action for SLAPP defendants "to recover ***damages***, including costs and attorney's fees." *Id*. (emphasis added). The three subsections of Section 70-a(1) identify the types of damages available: (a) costs and attorneys' fees, (b) "***other compensatory*** damages," and (c) punitive damages. *Id.* (emphasis added). The plain language squarely categorizes attorneys' fees as a subset of damages.[13] *Id.* § 70-a(1). The statute's

[13] This interpretation coheres with much of the above analysis indicating that Section 70-a's use of the "action, claim, cross claim or counterclaim" language codifies a cause of action for recovery of damages, one component of which is attorneys' fees, which must be pursued by pleading, not motion. *C.f. J.B. ex rel. C.B. v. Essex-Caledonia Supervisory Union*, 943 F. Supp. 387, 390 (D. Vt. 1996) (Rule 54 "presupposes that a final judgment is entered by a court and that a post-judgment request for fees and costs is ancillary to that judgment and not a separate cause of action").

reference to "other compensatory damages" further demonstrates that the Legislature considered anti-SLAPP fees as a subset of compensatory damages in particular.[14] *See National Football League v. Vigilant Insurance Co.*, 36 A.D.3d 207, 212-13, 824 N.Y.S.2d 72 (1st Dep't 2006) (adopting interpretation of insurance policy pursuant to "reverse ejusdem generis" canon, under which "the phrase 'A, B or any other C indicates that A is a subset of C'") (quoting *Safe Food & Fertilizer v. Environmental Protection Agency*, 350 F.3d 1263, 1269 (D.C. Cir. 2003)).

These characteristics of Section 70-a distinguish it from the statute at issue in *CIT Bank*. There, the Eastern District of New York held that Rule 54(d)'s motion requirement displaced New York Real Property Law § 282, which requires that certain mortgagors seeking to obtain fees from mortgagees do so by way of separate action or counterclaim. 2021 WL 3354047 at *4-5. Unlike Section 70-a, that statute – titled "Mortgagor's right to recover attorneys' fees in actions or proceedings arising out of foreclosures of residential property" – does not mention the word damages, let alone describe fees as a type or measure of damages. *See* N.Y. Real Prop. Law § 282. Thus, the statute did not fall under Rule 54(d)'s exception for fees to be proved as an element of damages, and its

[14] Compensatory damages "are intended to have the wrongdoer make the victim whole – to assure that the victim receive fair and just compensation commensurate with the injury sustained." *Ross v. Louise Wise Services, Inc.*, 8 N.Y.3d 478, 489, 835 N.Y.S.2d 509 (2007); *accord Bernshteyn v. Feldman*, No. 04-CV-1774, 2006 WL 2516514, at *4 (S.D.N.Y. Aug. 29, 2006) ("Under New York law, compensatory damages are just that – compensatory. A plaintiff may only recover damages for actual losses"); *New York and Presbyterian Hospital v. New York State Nurses Association*, No. 24-CV-5648, 2024 WL 5107586, at *5 (S.D.N.Y. Dec. 13, 2024) (compensatory damages "compensate the injured victim for the injuries actually endured"), *aff'd sub nom. New York Presbyterian Hospital v. New York State Nurses Association*, 180 F.4th 482 (2d Cir. 2026).

action or counterclaim requirement was displaced by Rule 54(d)'s motion requirement. *CIT Bank*, 2021 WL 3354047, at *4-5.

Inasmuch as Section 70-a specifies that legal fees are one subset of damages that may be recovered by a SLAPP Fee Applicant, they necessarily are an element of damages under New York's substantive law – that law being Section 70-a and its cause of action to recover damages caused by a SLAPP action. After all, to recover economic damages, a plaintiff typically bears the burden of proving both that they have suffered monetarily and what those monetary losses are. *See Berley Industries, Inc. v. City of New York*, 45 N.Y.2d 683, 686, 412 N.Y.S.2d 589 (1978) ("It is fundamental to the law of damages that one complaining of injury has the burden of proving the extent of the harm suffered"); *Reif v. Nagy*, 199 A.D.3d 616, 158 N.Y.S.3d 89 (1st Dep't 2021) (same); *Lemczik v. Artie's Auto Parts, Inc.*, 238 A.D.3d 1148, 1149, 237 N.Y.S.3d 61 (2d Dep't 2025) (same); *see also Bracey v. Board of Education of City of Bridgeport*, 368 F.3d 108, 119 (2d Cir. 2004) (if a plaintiff "wants damages, he must prove them").

In short, because Section 70-a contemplates attorneys' fees as a subset of damages to be pursued in a separate cause of action, Section 70-a attorneys' fees fall under Rule 54(d)'s "unless" exception for "fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A); *see also Scottsdale Insurance Co.*, 2024 WL 4512210, at *11 (when "attorneys' fees are sought as the measure of compensatory damages … the quantum of attorney's fees is properly presented to and decided by the jury" as factfinder). Therefore, Rule 54(d)'s motion requirement does not apply here and does not displace any alternative directive contained in Section 70-a. Defendants'

request for fees by post-dismissal Rule 54(d) motion is procedurally improper and should be denied, without prejudice.

**Conclusion**

For the reasons set forth above, Defendants' motion for attorneys' fees should be DENIED without prejudice. To the extent not discussed above, the Court has considered the parties' arguments and found them to be either moot or without merit.

**Deadline For Filing Objections And Preserving Appeal**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Any party shall have fourteen (14) days to file a written response to the other party's objections. Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007. Any request for an extension of time for filing objections must be addressed to Judge Daniels. **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

SO ORDERED.

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: November 24, 2026
New York, New York

Copies transmitted this date to all counsel of record.